THE CITY OF GREENCASTLE v. HAZELETT.

INJUNCTION.—The complaint averred that A owned a tract of land, near Greencastle, of peculiar value, because of a fine spring thereon, near which valuable buildings have been erected; that the city has purchased an adjoining tract, which it is about to use for the burial of the dead; that the surface drainage of part of the proposed cemetery leads into A's spring; that there are also subterranean streams passing through the fissures of the rock and otherwise in the cemetery, which, as A believes, discharge themselves into his spring; that the use of the land for burial purposes is not a public necessity, and will destroy the use of the spring, and greatly injure A's land.

Held, that an injunction was improperly granted by the lower court.

SUBTERRANEAN STREAMS.—It is impossible to establish correlative rights in subterranean streams, the situation of which is not known. They fall within that principle of the law which gives to the owner of the land whatever is beneath the surface.

CITIES—CEMETERIES.—The city has complete authority to establish cemeteries, and this implies a discretion to judge of their necessity.

APPEAL from the Putnam Circuit Court.

FRAZER, J.—The complaint avers that Hazelett is the owner of a tract of land near Greencastle, which has peculiar value as a residence property, on account of a fine spring thereon, supplying abundant water for domestic uses; that the place has been improved, at great expense, for a residence, by the erection of valuable buildings near the spring; that the city has purchased an adjoining tract, which it is about to use for the burial of the dead; that the surface drainage of a portion of the proposed cemetery grounds leads into Hazelett's spring; that there are also subterraneous streams passing through fissures of rock and otherwise in the cemetery, which, as Hazelett believes, discharge themselves into his spring; that the use of the city's lands for burial purposes is not a public necessity, and will destroy the use of the spring, and greatly injure the value of the plaintiff's property. The complaint concludes by praying a temporary injunction until the city shall pay the damages, which it claims will be $2,000, and for general relief.

Upon this complaint the Circuit Court granted a temporary injunction, from which the city appeals.

All that is alleged in the complaint about the surface drainage may be laid out of the case, as it does not in any manner affect the question involved. The interment of the dead, in the manner practiced in this country, can not change the character of that drainage so as to injure the plaintiff's spring. But the streams which pass beneath the surface, and constitute the sources of supply of the spring, as is supposed, (for this is not positively alleged or known,) will be rendered impure, and thus the use of the spring be destroyed. Is this such an injury to any right of the plaintiff as the law will interpose to prevent by injunction?

The rights of riparian owners, relating to streams passing upon the earth's surface, are well understood and settled. They are often the subject of litigation, and the law relating to them forms a familiar branch of professional learning. Not so, however, as to those which flow unseen beneath the surface. Their courses, and even their existence, are often unknown, until accident discovers them. The geologist has no knowledge which enables him to trace their channels. They can, as a general thing, be definitely ascertained only by excavation. Until the appearance of Mr. *Washburn's* recent and valuable work on Easements and Servitudes, no text writer had, to our knowledge, given the subject of sub-surface streams any satisfactory consideration.

It is quite evident, on account of the difference between the two things, that the rules of law applicable to streams upon the surface ought not to be applied to those which, unseen and unknown, flow beneath. As to the first, inasmuch as their course and character are open to view, each proprietor can so use his property, for the purposes of tillage, or manufactures, or embellishment, or any other useful end, as will not interfere with the comfort or convenience, or any of the correlative rights of proprietors above or

below; but, as to the last, excavations for building, or for working mines, or for securing water for domestic uses by wells, may be found, after large expenses have been incurred, to cut off the supplies of a conterminous proprietor's well or spring, involving liability for injury that could not be foreseen, and the necessity of abandoning enterprises the most laudable, which have been undertaken innocently, and produced heavy outlays before any injury to others could have been anticipated. The case at bar may furnish a strong illustration. Should this injunction be sustained, it is quite possible, and not very improbable, that the city of *Greencastle* will be restrained from making a use of its own property, upon the mere conjecture that such use will injure *Hazelett*, when in fact it will not. Such is the nature of the subject, that no certain knowledge exists as to whether he would be injured or not. He is not positive about it in his complaint, because indeed he could not be. It is mere matter of opinion. Intelligent and reputable citizens, whose affidavits were read upon the application, differ upon the question. A geologist, who is a professor of natural science in *Asbury University*, thinks that much of the cemetery grounds are so situated that streams beneath the surface flow, not toward, but away from, the plaintiff's spring. But we do not decide this case upon any inclination to approve either of these differing opinions; the circumstances are alluded to only to show that the subject is of such a nature that the law regulating rights in surface streams ought not to be held applicable to it.

It seems to result, from this view of the matter, in the light of just principle and sound public policy, without regard to authority, that it would probably be also impossible to establish correlative rights in a subterraneous stream, the situation of which is not known, by any system of rules which the law-making power could devise, without doing injustice or creating great embarrassment in the use of property. We have no knowledge that it has ever

been attempted, and doubtless it has not been for that reason.

But we are not altogether without authority upon the question before us. This court, in *N. A. & S. R. R. Co.* v. *Peterson*, 14 Ind. 112, decided that if a railroad company, in excavating to make the grade of its road, where it has the right to make it, drain the well of an adjoining proprietor, it is *damnum absque injuria*, and no action will lie. It was so held upon the authority of *Acton* v. *Blundell*, 12 M. & W. 324; *Greenleaf* v. *Francis*, 18 Pick. 117; *Roath* v. *Driscoll*, 20 Conn. 533; and *Chatfield* v. *Wilson*, 28 Vt. 49. These cases are to the point, and are put upon the ground that the question is not to be determined by the law applicable to rivers and flowing streams; but falls within that principle which gives to the owner of the land whatever is found below the surface, whether rock, or minerals, or earth, or water; and that he may dig and apply to his own use whatever he finds there, because it is his absolute property. To the same effect are *Ellis* v. *Duncan*, 21 Barb. 230; *Parker* v. *Boston and Maine R. R.*, 3 Cush. 107; *Harwood* v. *Benton*, 32 Vt. 737; *Brown* v. *Illius*, 25 Conn. 583.

This doctrine is applicable to the case at bar, and must determine it against the action of the court below, unless the appellant, being an incorporated city, instead of a natural person, does not possess the same rights which an ordinary owner might exercise. But this fact, in view of the power which the legislature has given to such corporations, makes the case still clearer, and indeed furnishes of itself a conclusive reason against the injunction.

The city has complete authority to establish cemeteries. 1 G. & H. 224. This implies a discretion to judge of their necessity, and to select their location; for without this discretion the authority could not be exercised. Though there is an averment in the complaint, that this cemetery is not a public necessity, yet we can not look into that question in this case. It was a question for the

city to determine, and no power is conferred upon this court to review their decision, where no question is raised as to the good faith with which it was made. This court has heretofore so held, in a case involving the same principle. *Macy* v. *Indianapolis*, 17 Ind. 267. We must regard the cemetery, then, as lawfully established. The plaintiff claims that he will be consequently injured thereby. If this were conceded, he would yet have no case, for the legislature has not provided any remedy for that injury, and was not bound by the constitution to do so. It is not a taking of private property for public use. *Macy* v. *Indianapolis, supra,* and cases there cited. *City of Vincennes* v. *Richards,* at this term.

The interlocutory order, granting a temporary injunction, is reversed, with costs. Cause remanded.

*Addison Daggy,* for appellant.
*D. E. Williamson,* for appellee.