CITY OF VALPARAISO and City of Valparaiso Board of Public Works, McMahon Associates, Inc., and Woodruff & Sons, Inc., Appellants–Defendants,

v.

Clark H. DEFLER and Joan H. Defler, Appellees–Plaintiffs.

No. 64A03–9704–CV–127.

Court of Appeals of Indiana.

May 18, 1998.

Rehearing Denied July 14, 1998.

Steven P. Polick, Steven P. Polick & Associates, P.C., Highland, for City of Valparaiso.

Edward Volk, Newby, Lewis, Kaminski & Jones, LaPorte, for McMahon Associates, Inc.

Robert D. Truitt, South Bend, for Woodruff & Sons, Inc.

Sam J. Bernardi, Jr., Valparaiso, for McMahon Associates, Inc.

Brian W. Walker, Cheryl M. Knodle, Ball, Eggleston, Bumbleburg McBride Stapleton

& Walkey, PC, Lafayette, for Clark H. & Joan H. Defler.

David C. Appel, Valparaiso, for Steven E. Divich.

## OPINION

STATON, Judge.

This interlocutory appeal arises from a lawsuit filed by Clark and Joan Defler against the City of Valparaiso and its Board of Public Works ("City"), McMahon Associates, Inc. ("McMahon"), and Woodruff & Sons, Inc. ("Woodruff").[1] The Deflers allege that the City, McMahon, and Woodruff, in the course of designing and constructing a sewer lift station adjacent to their property, caused their land to subside. The City filed a motion for summary judgment which the trial court denied. The City raises two issues, which we have restated. McMahon and Woodruff have joined the City's appeal only with respect to the first issue. The issues are:

I.  Whether a landowner's right to remove ground water from his own property shields him from liability for subsidence damage caused to adjoining landowners as a result of the water's removal.

II. Whether the City is immune from liability under the Indiana Tort Claims Act.

We affirm.[2]

The facts most favorable to the non-movant reveal that the City became aware of environmental and performance problems with a sewer line. The City contracted with McMahon to recommend solutions to these problems. Based upon an evaluation of alternative solutions presented by McMahon, the City decided to install a sewer lift station. The City contracted with Woodruff to construct the lift station on a City-owned easement adjacent to the Deflers' property.

---

1.  The present lawsuit was initiated by the Deflers. Steven E. Divich, who has a similar lawsuit pending in Porter Superior Court, was permitted to intervene in the Deflers' lawsuit for the purpose of opposing the City's motion for summary judgment. Thus, Divich is also a party on appeal.

2.  The City's request for oral argument is denied. We also deny McMahon's June 27, 1997 motion for consolidation on appeal, wherein it joined the City's and Woodruff's requests that we consolidate the Defler litigation with certain actions pending in the Porter and Lake Superior Courts. We denied the City's and Woodruff's motions to consolidate on June 26, 1997, but had heretofore not ruled on McMahon's motion.

The lowest part of the lift station was designed to be approximately thirty feet below grade. Woodruff was required by the contract specifications to maintain the water level below the excavation. In order to accomplish this, Woodruff continuously pumped ground water out of the site. The Deflers allege that this continuous dewatering resulted in a substantial amount of ground water being removed from their property which in turn caused their land to subside.

■■■ When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co.*, 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon*, 609 N.E.2d at 1127.

## I.

### Liability for Subsidence Damage Caused by Ground Water Removal

■■■ The City argues that because it had a right to remove ground water from its own property, the City may not be held liable, as a matter of law, for the subsidence damage caused to the Deflers' land by removal of the water. In support of its argument, the City cites a line of Indiana cases regarding the ownership and use of ground water. *See Wiggins v. Brazil Coal and Clay Corp.*, 452 N.E.2d 958 (Ind.1983), *reh. denied; City of Greencastle v. Hazelett*, 23 Ind. 186 (1864);

and *New Albany & S. R.R. v. Peterson*, 14 Ind. 112 (1860). Although the City styles its argument as one involving a settled area of law, we believe the City's argument raises an issue of first impression in Indiana: whether a landowner's right to remove ground water from his property shields him from liability for subsidence damage to adjoining land caused by the water's removal.

Two general theories have developed in the United States regarding the ownership and use of ground water.[3] *See* 78 Am.Jur.2d *Waters* § 156 (1975); Kristine Cordier Karnezis, Annotation, *Liability of Landowner Withdrawing Ground Water from Own Land for Subsidence of Adjoining Owner's Land*, 5 A.L.R.4th 614 (1981). The first theory, known as the English Rule or the absolute dominion rule, provides that ground water is part of the land and the landowner has the absolute right to use the water as he wishes. 78 Am.Jur.2d *Waters* § 157 (1975); 3 Waters and Water Rights, §§ 20.01 and 20.03 (Robert E. Beck ed., 1991) [hereinafter Waters]. This absolute right allows the owner of land to remove ground water regardless of the damage caused to neighboring property owners. 78 Am.Jur.2d *Waters* § 157 (1975); 3 Waters, *supra*, § 20.01. To this end, some jurisdictions following the English Rule have refused to impose liability on landowners who, in the course of withdrawing ground water, have caused adjoining property to subside. Karnezis, *supra*, at 615 (citing *Finley v. Teeter Stone, Inc.*, 251 Md. 428, 248 A.2d 106 (1968); *Friendswood Dev. Co. v. Smith–Southwest Indus., Inc.*, 576 S.W.2d 21 (Tex.1978)).

The second theory regarding the ownership and use of ground water is known as the American Rule or the reasonable use rule. 78 Am.Jur.2d *Waters* § 158 (1975); 3 Waters, *supra*, § 23.01.[4] The American Rule

---

**3.** The law with respect to ground water can differ depending upon whether underground streams or percolating water is involved. *See* 78 Am.Jur.2d *Waters* § 146 (1975). Percolating water is that "which pass[es] through the ground beneath the surface of the earth without any definite channel, and [does] not form a part of the body or flow, surface or subterranean, of any water-course." Black's Law Dictionary 1591 (6th ed.1990). Neither the City nor the Deflers have asserted that the ground water at issue is anything other than percolating; thus, our reference to ground water refers only to percolating water.

*See* 93 C.J.S. *Waters* § 87 (1956) and 3 Waters and Water Rights, § 20.07(a)(4) (Robert E. Beck ed., 1991) (underground waters are presumed to be percolating).

**4.** The authors of Waters and Water Rights identify four different legal doctrines relating to the use and ownership of ground water—the English or absolute dominion rule, the American or reasonable use rule, the correlative rights rule, and the appropriation doctrine. 3 Waters, *supra*, § 20.04. Unlike the English Rule, the American Rule, the correlative rights rule, and the appro-

provides that where the rights of others are affected by a landowner's use of ground water, his use is limited to a "reasonable and beneficial use" or to "some useful purpose connected with its occupation and enjoyment." 78 Am.Jur.2d *Waters* § 158 (1975). Under this rule, the effect that a landowner's use of ground water has on neighboring landowners is taken into consideration. *Id.* Some jurisdictions following the American Rule, or a variation thereof, have held landowners liable for the negligent use of ground water which causes adjoining property to subside. Karnezis, *supra,* at 615–16.

Although the English Rule was followed in nearly all of the early American cases, 78 Am.Jur.2d *Waters* § 157 (1975) (citing cases), only ten states continue to follow the English Rule. *See* 3 Waters, *supra,* § 21.01. A majority of states now follow the American Rule or the correlative rights rule. *See* 78 Am.Jur.2d *Waters* § 158 (1975) (citing cases); 3 Waters, *supra,* §§ 22.01—23.03. Despite the modern trend toward adoption of the American Rule, Indiana continues to follow a version of the English Rule. *See New Albany,* 14 Ind. at 114; *see also* Note, *Water Rights in Indiana,* 32 Ind. L.J. 39, 47 (1956); 3 Waters, *supra,* § 21.04.

Indiana first adopted a version of the English Rule in 1860. *New Albany,* 14 Ind. at 114. More recently, the Indiana Supreme Court reaffirmed this state's adherence to the rule in *Wiggins v. Brazil Coal and Clay Corp.,* 452 N.E.2d 958 (Ind.1983). Pursuant to the rule set out in *Wiggins* and *New Albany,* the City argues that a landowner may not be held liable for damage of any kind, including subsidence damage, to neighboring property where the damage was caused by the removal of ground water and where the water was not removed gratuitously or with the intent to harm neighboring landowners.

If Indiana followed the English Rule in its purest form, we would be forced to agree with the City. Strictly applied, the English Rule shields a landowner from liability for all types of damage caused by the removal of ground water, including subsidence damage.[5] Our cases reveal, however, that Indiana has not adopted such a strict version of the English Rule.

Our supreme court has never applied the English Rule so broadly as to shield a landowner from liability for the type of damage incurred by the Deflers. A close reading of *New Albany* and *Wiggins* reveals that the type of loss suffered by the plaintiffs in those cases is distinctly different from subsidence damage.

In *New Albany,* a railroad company was building a railroad bed adjacent to the plaintiff's property. In the course of digging the road-bed, the company cut off the plaintiff's well from a spring which supplied it. The plaintiff's well subsequently went dry, and he sued to recover damages. On appeal, our supreme court held that the plaintiff could not recover because the railroad company, as the owner of the property on which it was digging, had the right to use the property beneath the surface in any manner it wished. 14 Ind. at 114.

In *Wiggins,* the plaintiffs were the owners of an abandoned strip mining pit which had filled with water and which they used for recreational purposes. The defendant coal company conducted a strip mining operation on its own property near the plaintiffs' pit. During the course of a dig, water began rushing into the coal company's strip pit. The coal company proceeded to pump the water out, but as it did so, the water level of the plaintiffs' pit began to fall. It was determined that the water from the plaintiffs' pit was moving through natural and artificial fissures to the coal company's pit. The coal

---

priation doctrine all recognize limits on the use of ground water by landowners. *Id.* For purposes of our discussion, we refer to these three doctrines collectively as the American Rule.

**5.** British courts strictly apply the English Rule. 3 Waters, *supra,* § 21.02. A landowner in England may not be held liable for the use of ground water which injures a neighbor, even where the landowner acts maliciously or with the intent to injure a neighbor. *Id.* (quoting *Langbrook Prop-*

*erties, Ltd. v. Surrey County Council,* 3 All E.R. 1424, 1440 (Ch. Div.1969)). Accordingly, it was held that an adjoining landowner could not recover damages "in a land subsidence case, in which a landowner warned a pumper that her land would subside if pumping were not modified, and whose land subsequently did subside as a result of the unmodified pumping." *Id.* (citing *Stephens v. Anglian Water Auth.,* 3 All E.R. 379, 384 (1987)).

company continued to pump water, which eventually resulted in all of the water being emptied from the plaintiffs' pit.

The Indiana Supreme Court held that the coal company was not liable to the plaintiffs for causing their strip pit to lose all of its water. *Wiggins*, 452 N.E.2d at 964. In so holding, the court applied the English Rule, as limited by cases decided subsequent to *New Albany. Id.* at 962–63. The court held:

> Water which percolates away underground through porous earth from beneath one lot to surrounding lands, no longer belongs to the owner of the lot. Such water is regarded as lost water and is considered at any given time to be part of the land with which it mingles.... Ground water is part of the land in which it is present and belongs to the owner of that land. It may be put to use to the fullest extent to further enjoyment of the land, however this right does not extend to causing injury gratuitously or maliciously to nearby lands and their owners.

*Id.* at 963–64.

Although both the *New Albany* and *Wiggins* plaintiffs were undoubtedly injured by the defendants' actions, it is important to note that the plaintiffs did not lose anything to which they had a legal right. The *New Albany* plaintiff lost the water which had previously filled his well. The *Wiggins* plaintiffs lost water which had previously filled their strip pit.[6] In *People's Gas Co. v. Tyner*, 131 Ind. 277, 31 N.E. 59 (1892), the Indiana Supreme Court noted that ground water is not a landowner's property until the landowner takes it into actual possession. *Id.* at 281, 31 N.E. 59 (citing JOHN M. GOULD,

WATERS § 291 (1883)). *Accord Williams v. City of Wichita,* 190 Kan. 317, 374 P.2d 578, 594 (1962); *Adams v. Grigsby,* 152 So.2d 619, 624 (La.Ct.App.1963); *Knight v. Grimes,* 80 S.D. 517, 127 N.W.2d 708, 711 (1964) (all holding that a landowner has no property right in ground water itself, but merely has the right to take the water into possession). Thus, the plaintiff in *New Albany* did not own the water which was in his well and the *Wiggins* plaintiffs did not own the water in their strip pit. Unlike the *New Albany* and *Wiggins* plaintiffs, however, the Deflers have lost something to which they had a legal right—the subjacent support of their land.

Indiana courts have consistently held in the context of mineral rights cases that a surface landowner enjoys the right to the subjacent support of his land. *Haseman v. Orman,* 680 N.E.2d 531, 534 (Ind.1997); *Paull v. Island Coal Co.,* 44 Ind.App. 218, 222, 88 N.E. 959, 960 (1909). Thus, where a landowner has sold the right to remove minerals, the party owning the minerals, upon removing them, must provide sufficient support to sustain the soil above. *Paull,* 88 N.E. at 960. Given its mobility, ground water is of a somewhat different character than minerals. Nevertheless, we think the fundamental legal principle applied in the mineral cases—that a party who removes subsurface property must, in the course of removing the property, leave sufficient support for the surface soil owned by another—is equally applicable to ground water cases.[7]

In sum, *New Albany* and *Wiggins* do not support the City's argument that it may not be held liable for the Deflers' subsidence damage.[8] In absence of clear authority to

---

**6.** Although the water in the plaintiffs' strip pit was not beneath the surface of their land, the supreme court characterized the water as ground water since the strip pit was porous and "the property and tendency of the amassed water in the pit to seep and percolate to adjoining lands was ... always present." *Id.* at 964.

**7.** The Indiana Supreme Court has held in mineral rights cases that a person owning minerals is strictly liable for subsidence damages caused by their removal. *Haseman,* 680 N.E.2d at 534 (citing *Yandes v. Wright,* 66 Ind. 319 (1879)). The issue has not been raised here and we do not address whether strict liability also applies where subsidence damage is caused by the removal of ground water.

**8.** The City also cites *City of Greencastle v. Hazelett,* 23 Ind. 186 (1864) in support of its argument. The plaintiff in *Hazelett* owned property adjacent to a tract owned by the City of Greencastle which the city intended to use as a cemetery. The plaintiff sought to enjoin the city from using its property as a cemetery, fearing that a spring on the plaintiff's land would be damaged due to drainage from the cemetery. On appeal, the Indiana Supreme Court cited the English Rule and held that the City could not be enjoined from using its property for a cemetery. *Id.* at 189. *Hazelett* presents different facts than *New Albany* or *Wiggins* because the *Hazelett* plaintiff faced the prospect of having the water beneath his land polluted instead of being taken in its entirety. Nevertheless, the *Hazelett* plaintiff's damages remain significantly different from subsidence

the contrary, we decline to interpret Indiana's version of the English Rule in a manner which would essentially place the right to remove ground water from one's property above the right of an adjoining landowner to the subjacent support of his land. Our refusal to so interpret Indiana's case law is bolstered by the clear trend in this state and in other jurisdictions toward ameliorating the often harsh consequences which can result from strict application of the English Rule. *See Natural Resources Comm'n v. AMAX Coal Co.*, 638 N.E.2d 418, 429 (Ind.1994), *reh. denied*, (holding that the State may regulate the use of ground water without destroying property rights in its use); *Wiggins*, 452 N.E.2d at 964 (holding that right to the use of ground water does not extend to causing injury "gratuitously or maliciously to nearby lands"); *Gagnon v. French Lick Springs Hotel Co.*, 163 Ind. 687, 72 N.E. 849 (1904) (holding that the right to use ground water does not extend to using water maliciously or wastefully); *see also* 78 Am.Jur.2d *Waters* §§ 157–158 (1975) (English Rule was followed in nearly all early American cases, but now a majority of states follow the American Rule or the correlative rights rule). We hold that Indiana's law regarding the ownership and use of ground water does not shield the City from liability for subsidence damage caused by the City's removal of the water. Accordingly, the trial court correctly denied summary judgment in favor of the City on this issue.

## II.

### Tort Claims Act Immunity

The City argues that it is immune from liability for any damages caused to the De-flers under the Indiana Tort Claims Act ("ITCA"). Generally, the ITCA provides that governmental entities may be liable for torts committed by their agencies and employees. *Peavler v. Monroe County Bd. of Comm'rs*, 528 N.E.2d 40, 42 (Ind.1988). However, the ITCA protects governments from liability if a government's conduct falls within certain statutorily-enumerated exceptions. *Id.*; Ind.Code § 34–4–16.5–3 (1993). The City contends that its actions in planning

and constructing the sewer lift station fall within three of these exceptions to liability.

■ We first note that the City, as the party seeking immunity, has the burden of proving that its conduct falls within one of the exceptions set forth under the ITCA. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 438 (Ind.Ct.App.1996), *trans. denied*. Too, we narrowly construe immunity because it provides an exception to the general rule of liability. *Id.* at 439.

■ First, the City claims that it is immune from liability because its decision to build a lift station was a discretionary function. IC 34–4–16.5–3(6) provides that a governmental entity or an employee acting within the scope of his employment is not liable for losses caused by "the performance of a discretionary function." In determining whether governmental acts are discretionary, Indiana applies the "planning-operational" standard. *Lake County Juvenile Court*, 671 N.E.2d at 439 (citing *Peavler*, 528 N.E.2d at 46). Planning functions are discretionary and therefore shielded by immunity, while operational functions are not. Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.* Operational functions are characterized by the execution or implementation of previously formulated policy. *Id.*

Although we look to whether an activity is planning or operational, the supreme court stated in *Peavler* that "[m]erely labeling an action as planning or operational, without more," is insufficient. *Peavler*, 528 N.E.2d at 45. The court continued:

The distinction between planning and operational functions is a standard, rather than a precise rule. The focus must remain on the policy underlying governmental immunity. If the act is one committed to coordinate branches of the government involving policy decisions not reviewable under traditional tort standards of reasonableness, the government is immune from

damage because the *Hazelett* plaintiff has still only lost, as a result of pollution, water in which he had no ownership rights.

liability even if the act was performed negligently.

*Id.* at 45.

The City contends that its decision to build a sewer lift station was a policy decision, made only after the City balanced the risks and benefits associated therewith. While the decision to build a lift station, as compared to other alternatives for correcting the City's sewage problem, may have been a planning function, the Deflers have not challenged the City's decision to build the lift station. Instead, the Deflers have challenged the method by which the lift station was constructed; specifically, the decision to dewater the construction site to such an extent that the Deflers' land subsided. This decision, although it required the City and its contractors to exercise professional judgment, is one which may be evaluated under traditional tort standards of reasonableness. *See Borne v. Northwest Allen County Sch. Corp.,* 532 N.E.2d 1196, 1200 (Ind.Ct.App.1989) (professional judgments are not immune unless they can be characterized as policy decisions). Accordingly, we hold that the City is not immune from liability under the discretionary function exception.

▇ Second, the City contends that it is immune from liability pursuant to IC 34–4–16.5–3(7) which provides immunity where a governmental entity or an employee acts to enforce a law. The City notes that it was building the sewer lift station in order to comply with a mandate by the Indiana Department of Environmental Management ("IDEM") and the Environmental Protection Agency ("EPA") that it correct a sewer discharge problem. As such, the City argues, it is immune from liability because, by building the lift station, it was merely enforcing environmental laws and regulations.

IC 34–4–16.5–3(7) does not apply in the present case. In *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278 (Ind.1994), the Indiana Supreme Court discussed the type of law enforcement activities which are cloaked with immunity under IC 34–4–16.5–3(7). The court held that "the scope of 'enforcement' is limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin,* 639 N.E.2d at 283. Here, the City has not sought to compel the obedience of another to the law. Rather, it has been forced to comply with the law by other governmental entities—IDEM and the EPA. Accordingly, IC 34–4–16.5–3(7) does not provide the City with immunity for allegedly causing the Deflers' land to subside.

▇ Finally, the City contends that it is immune from liability under IC 34–4–16.5–3(9) which provides that a governmental entity is not liable for losses caused by "the act or omission of anyone other than the governmental entity or the governmental entity's employee." The City argues that it cannot be held liable for Woodruff's or McMahon's negligence in building and designing the lift station, and more specifically, in dewatering the project site. Further, the City argues that it has no liability independent of Woodruff and McMahon because it performed none of the design or construction work related to the project.

In opposing the City's motion for summary judgment on this issue, the Deflers designated evidence which raises a genuine issue of material fact as to whether the City participated in the design and construction of the lift station. The designated evidence reveals that the City assigned an employee, Richard Kraus, to serve as project manager and perform work related to the sewer lift station project. Prior to construction, Kraus was involved in discussions of the lift station design and in reviewing the design. During the course of construction, Kraus was responsible for determining Woodruff's compliance with project plans and specifications. Kraus was also involved with the dewatering of the site. After receiving a complaint from the Deflers about subsidence damage to their property, Kraus told Mrs. Defler that he was terminating part of the dewatering. Taken as a whole, this evidence raises a genuine issue of material fact regarding the City's role in designing and building the lift station.

We hold that the trial court properly denied the City's motion for summary judgment based upon its claim of immunity under the ITCA.

Affirmed.

**1184**

GARRARD, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

The majority maintains that there is a clear trend in this state toward ameliorating the harsh consequences which can result from the strict application of the English rule. Based upon this conclusion, the majority distinguishes the instant case from *City of Greencastle, New Albany,* and *Wiggins* finding that the plaintiffs in those cases lost only water, in which they had no property rights, while, in the instant case, the Deflers lost the subjacent support of their land, something to which they had a legal right.

However, the majority is attempting to interject recovery where our supreme court has specifically held that recovery does not exist. *City of Greencastle, New Albany,* and *Wiggins* all stand for the proposition that ground water becomes a part of the land under which it is present and belongs to the owner of the land. The person who owns the land over which the water runs may put that water to use to the fullest extent to further enjoyment of the land. *Wiggins,* 452 N.E.2d at 964; *New Albany,* 14 Ind. at 114; *City of Greencastle,* 23 Ind. at 189. If, in the further enjoyment of the land, an owner causes loss to a neighbor's land, the inconvenience to the neighbor falls within the description of *damnum absque injuria.*[9] Therefore, there is no action for damages from the resulting injury unless the injury is done maliciously. *Wiggins,* 452 N.E.2d at 964.

Here, the City of Valparaiso, as the owner of the easement containing the sewer line, not only had the right to use the land, including the ground water running below the surface, but also had the right to use that water to the fullest enjoyment of the property. When the sewer problems emerged and the City was required by the Indiana Department of Environmental Management ("IDEM") to remedy the situation, the City studied extensively the sewer problem, and researched many options to alleviate the problem. After researching and rejecting

options that were too costly, time consuming, and problematic, the City determined that the best recourse was to build the lift station.

There is no evidence before us that the City's decision to build the lift station, and the dewatering that resulted therefrom, was made in an attempt to injure the Deflers. To the contrary, the evidence shows that because the City was faced with a serious situation which included the possibility of sewer back-ups and the ex-filtration of sewage into the ground, the City, after extensive research, chose the option that would remedy the situation in a cost effective and timely manner.

The dewatering of the site was not done with malice or with the intent to harm the Deflers. It was, instead, a beneficial use of the water in that it allowed the lift station to operate which, in turn, remedied a serious sewer problem. Applying the reasoning in *City of Greencastle, New Albany,* and *Wiggins,* the City should not be held liable for the resulting injury to the Deflers' property.

The trial court should have entered summary judgment.

---

9. *Damnum absque injuria* is defined as loss, hurt, or harm without injury in the legal sense.

Blacks Law Dictionary, p. 393 (6th Ed.1990).