Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 13 2014, 7:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NICHOLAS T. OTIS**
**MARTIN W. KUS**
Newby Lewis Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEY FOR APPELLEES:

**MICHAEL C. HARRIS**
**JULIE A. PAULSON**
Harris Welsh & Lukmann
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITY OF VALPARAISO, INDIANA | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1307-PL-239 |
| | ) | |
| RICHARD and JANET BROWN, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-0911-PL-11902

**March 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Richard and Janet Brown filed a three-count complaint against the City of Valparaiso (the City) seeking damages for flooding of their property and home, contending that the flooding was caused by the City. In their complaint, the Browns claimed inverse condemnation, a 42 U.S.C. § 1983 civil action for deprivation of rights, and negligence. The trial court initially denied the City's motion for summary judgment as to the Browns' inverse condemnation and negligence claims, but entered judgment in favor of the City on the § 1983 claim. After holding an evidentiary hearing, the trial court entered an order denying the Browns' inverse condemnation claim on the merits. The City appeals from the trial court's order denying its motion for summary judgment as to the Browns' negligence claim, and denying its motion to strike certain exhibits designated and relied upon by the Browns to defend against the City's motion for summary judgment.

We affirm.

Sometime around 1973, Clarence Brown, Richard Brown's grandfather, parceled out of his farmland what is now the Browns' property, with Clarence retaining ownership of nearly 120 adjoining acres of farmland. The Browns live on the east side of Silhavy Road in Valparaiso, Indiana, and their property borders what is known as the Hotter Detention Facility, a water retention/detention facility run by the City. The Browns built an approximately 2000-square-foot, brick, ranch-style home with a 900-square-foot attached garage in the 1970s. In the late 1970s or early 1980s, the Browns finished the lower level of their home, completing an additional 2000 square feet of living area, with the lower level walking out onto a 20' by 40' concrete patio. Except for certain parts, the farmland would

2

eventually become the site of the Hotter Detention Facility, which lies immediately to the east of the Browns' property.

Also in the 1970s, the City developed a project in conjunction with a county project known as the Smith-Koselki-Crooked Creek Drain. Storm drainage from the Smith Ditch, a city drain, would be connected with the Koselki Ditch, which connected with and drained into the Kankakee River. A part of the plan was to improve an approximately ten-mile stretch of ditches, by widening, improving, and developing them through the course of the project.

Nearly contemporaneously with the drainage project, the City began developing a traffic-control project at the five-point intersection of Calumet Avenue, Roosevelt Avenue, and Vale Park Road. During the course of the project, storm water problems developed and the City received money from the federal government to reconstruct the intersection to address the storm water issues. As a result of the storm water concerns, the City acquired the Hotter Lagoon property and developed it by installing a levee to retain the storm water. The City received approval from the Indiana Department of Natural Resources on March 24, 1977. Under the plan, water would be brought into the Hotter Lagoon at an elevation of 790.8 feet above sea level and would flow in a southeasterly direction into a ditch with a control structure of 3, 24-inch corrugated metal pipes with an invert of 788.4 feet and a crest of 791 feet above sea level. The project was completed in the 1970s.

In the early 1980s, the City experienced three major storms within a period of years. The City commissioned an engineering study to plan and develop a city-wide storm water

3

plan because of the flooding and storm water problems experienced by the City. The City hired Donahue and Associates, design engineers and consultants, to assist the City Engineer, John Hardwick, in the design of the water-detention facility. Donahue was to study the storm water problems and to design and develop a larger storm water facility at the location of the current Hotter Facility, and to provide advice to the City by identifying problem areas, providing solutions to the problems, and providing cost estimates of the proposed improvements. In adopting the completed plan recommended by Donahue, the City, by its engineering and mayor's offices, weighed competing priorities and budgetary considerations. The Hotter Lagoon was expanded for the construction of the Hotter Detention Facility.

The Hotter Detention Facility was designed and developed to withstand a one-hundred-year storm[1] based on the City's previous experience with severe storms and the balancing of costs to develop and maintain a facility capable of handling larger storms. At the time the Hotter Detention Facility was being developed, what is now known as the Indiana Department of Transportation was planning and engineering the Indiana State Highway 49 bypass. The Department of Transportation was in need of dirt and soil to build bridge embankments on Highway 49 and the City needed to remove dirt and soil in the development of the Hotter Lagoon project.

The City and the Department of Transportation entered into an agreement under which the City would prepare plans and preliminary special provisions for a storm detention pond, outlet structures, and emergency spillway. The City was to acquire all rights-of-way needed

---

[1] In any given year, a one-hundred year storm has a one-percent chance of occurring.

4

for construction of the Hotter Detention Facility. The cost to prepare the plans and acquire the rights-of-way was the City's obligation. The cost of the construction was to be the State's obligation with the City's consent. As consideration for construction of the Hotter Detention Facility, the State and its contractors were allowed to remove, at no charge, any and all material excavated during the construction to use on the Highway 49 Bypass Project. The City was to provide all maintenance to the Hotter Detention Facility after its construction.

Hardwick had information in his office indicating that a topographical survey prepared on May 27, 1977 showed the 100 Year Flood Stage at an elevation of 792.12 feet above sea level. The engineering drawing additionally showed the elevation at the border shared by the Browns' and the City's Property was at an elevation of 792.5 feet above sea level, and that portions of the Browns' backyard was at an elevation of 792.8 feet above sea level. The Browns' property, although higher than the 100 Year Flood standard, was more than 3 feet lower than the wall of the Hotter Detention Facility and more than 2 feet lower than the Hotter Detention Facility's spillway.

Over the weekend beginning September 13, 2008, Valparaiso, Indiana experienced significant rain storms, which led to flooding of some property, and which qualified the City of Valparaiso for federal disaster relief as a result of the storms and flooding. Water entered the northeast portion of the Browns' property where it adjoined the Hotter Detention Facility. Sandbagging efforts by the Browns proved unsuccessful and approximately eighteen or more

5

inches of water entered the lower level of their home, damaging the carpeting, drywall, furniture, electrical outlets, appliances, and the furnace.

After unsuccessfully attempting to obtain relief from the City, the Browns complied with all tort-claim notice requirements and ultimately filed their complaint against the City to recover for their losses. At issue in this appeal is the trial court's denial of the City's motion for summary judgment with respect to the Browns' negligence claim, and the denial of the City's motion to strike certain evidence designated by the Browns. Additional facts will be supplied as necessary.

This is an appeal from the denial of a motion for summary judgment. In an Indiana summary judgment proceeding, "the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). T.R. 56(C) provides in pertinent part:

> At the time of filing [a] motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Miller v. Monsanto Co.*, 626 N.E.2d 538 (Ind. Ct. App. 1993).

6

When we review the grant or denial of a motion for summary judgment our standard of review is the same as that used by the trial court. *J.C. Spence & Assocs., Inc. v. Geary*, 712 N.E.2d 1099 (Ind. Ct. App. 1999). We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id*. In resolving those inquiries, we consider only the evidence that has been specifically designated to the trial court. *Id*. The party appealing the trial court's ruling has the burden of persuading this court that the trial court's decision was erroneous. *Id*. A summary judgment determination shall be made from any theory or basis found in the designated materials. *Id*. "We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant." *Id*. at 1102 (quoting *Diversified Fin. Sys., Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind. Ct. App. 1999)).

At issue is the Browns' remaining negligence claim against the City. The three elements of negligence are a duty owed to the plaintiff by the defendant, a breach of that duty by the defendant, and injury to the plaintiff proximately caused by that breach. *Kincade v. MAC Corp.*, 773 N.E.2d 909 (Ind. Ct. App. 2002). "Negligence will not be inferred; rather, all of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts." *Id*. at 911. An inference resting on no more than speculation on or conjecture is not a reasonable inference. *Kincade v. MAC Corp.*, 773 N.E.2d 909.

Furthermore, we have held that a negligence action is generally not appropriate for disposal by summary judgment. *Id*. A defendant in a negligence action, however, may

7

obtain summary judgment in such an action when the undisputed facts negate at least one element of the plaintiff's claim. *Id.* "Immunity assumes negligence but denies liability." *Peavler v. Monroe Cnty. Bd. Of Comm'rs.*, 528 N.E.2d 40, 46 (Ind. 1998). Thus, we first address the issue of the City's claim of immunity.

The City contends that the trial court erred by denying its motion for summary judgment on the Browns' negligence claim because the City is entitled to governmental discretionary immunity under Ind. Code Ann. § 34-13-3-3(7) (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.), a provision of the Indiana Tort Claims Act (the Act). That statutory provision reads as follows:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> . . . .
>
> (7) The performance of a discretionary function; . . . .

"Governmental entities, such as cities, are subject to liability for the torts committed by their employees unless one of the exceptions in the Act applies." *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 281 (Ind. 1994) (citing *Peavler v. Monroe Cnty. Bd. of Comm'rs.*, 528 N.E.2d 40 (Ind. 1988)). Because the Act is in derogation of the common law, we construe it narrowly against the grant of immunity. *Hinshaw v. Bd. of Comm'rs. of Jay County* (1993), Ind., 611 N.E.2d 637 (Ind. 1993). The party seeking immunity bears the burden of establishing its conduct comes within the Act. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278 (citing *Peavler v. Monroe Cnty Db. Of Comm'rs.*, 528 N.E.2d at 46)). If immunity is applicable, it renders the issue of duty in this negligence claim moot. *Peavler v.*

8

*Monroe County Bd. of Comm'rs.*, 528 N.E.2d 40.

In *Beck v. City of Evansville*, 842 N.E.2d 856 (Ind. Ct. App. 2006), we acknowledged that our Supreme Court, in *Peavler v. Monroe Cnty. Bd. of Comm'rs.*, adopted a planning/operational test for the purpose of defining discretionary acts under the Act. The use of the word "discretionary" in the Act "refers to the exercise of political power that is held accountable only to the Constitution or the political process." *Beck v. City of Evansville*, 842 N.E.2d at 861. Whether an act is discretionary and thus immune from liability is a question of law. *Id*. The trial court must determine whether the act subject to challenge is the type of function that the legislature intended to protect with immunity. *Id*. at 861-62.

> The court in *Peavler* set forth a number of factors, which, under most circumstances, point toward immunity:
> 1. The nature of the conduct—
> a) Whether the conduct has a regulatory objective;
> b) Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;
> c) Whether the conduct requires a judgment based on policy decisions;
> d) Whether the decision involved adopting general principles or only applying them;
> e) Whether the conduct involved establishment of plans, specifications and schedule; and
> f) Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.
> 2. The effect on governmental operations—
> a) Whether the decision affects the feasibility or practicability of a government program; and
> b) Whether liability will affect the effective administration of the function in question.
> 3. The capacity of the court to evaluate the propriety of the government's action—Whether tort standards offer an insufficient evaluation of the plaintiff's claim.
>
> In addition to these factors, it has been held that discretionary immunity is provided to governmental units for undertaking a policy-oriented decision-

9

making process. The decisionmakers can adopt a policy that recommends action, recommends action to be phased in over time, recommends no action, or recommends a combination of action and inaction. It does not matter what the adopted policy calls for, only that a policy was adopted. In essence, the government is exposed to liability only when no policy-oriented decision-making process has been undertaken. In the event that a governmental unit did engage in a policy-oriented decision-making process, the courts may not judge the wisdom of its decisions. Rather, that judgment is left to the political process.

*Beck v. City of Evansville*, 842 N.E.2d at 862 (internal citations omitted).

The Browns' negligence claim against the City alleged that the City "negligently designed, constructed, operated and/or maintained said retention pond and spillway such that the level of the spillway of said retention pond is approximately two to three feet higher in elevation than the [Browns'] adjacent property, so that the water flowing into the retention pond will flood [onto the Browns'] property before it crests and flows over the dam[,]" and that the City had actual or constructive knowledge of this because of land surveys that were completed at the City's request. *Appellant's Appendix* at 17-18.

The City asserts that it is entitled to immunity because it designated evidence of the history of the formation of its basic stormwater policy over the course of many years and the creation of a stormwater management board, which worked in conjunction with the City's engineering department staff, and the board's subsequent merger with the Valparaiso City Utilities Board of Directors. The Browns' claim, however, relates to negligence in the execution or implementation of the stormwater policy. The City contends that by adopting the plan presented to it by Donahue, the City consciously balanced benefits and risks. The Browns correctly observe that the City did not designate evidence to suggest that there was a

policy consideration regarding the height of the Hotter Detention Facility in relation to the Brown property, nor did the City designate evidence that it made a policy consideration to risk the potential flooding of the Browns' property. The Browns do not challenge the City's decision to build a stormwater detention facility, but instead challenge the way it was constructed, with particular emphasis on the height of the facility.

In *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind. 1993), our Supreme Court observed the following when considering a claim of immunity under the Act:

> If policy formulation included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would then fall within the discretionary function exception. There is no such broad legislative purpose. The immunity provided the performance of discretionary functions in I.C. § 34-4-16.5-3(6) does not shield the Sheriff's Department from liability for conduct associated with implementation of its established policies.

Here, the decision to build the Hotter Detention Facility at a height such that water would flood onto the Browns' property instead of exiting via the spillway, while having an element of choice or judgment, involves implementation and is operational; therefore the City is not shielded from liability under discretionary-function immunity.

In *City of Valparaiso v. Defler*, 694 N.E.2d 1177 (Ind. Ct. App. 1998), we considered the City's claim of tort claim immunity under the discretionary-function provision. Addressing sewer line problems, the City contracted for and sought advice for a solution to the problems, ultimately choosing to install a sewer lift station on an easement adjacent to the Deflers' property. In the course of building the lift station, ground water had to be pumped from the site to maintain a water level below the excavation. The Deflers claimed that the continuous dewatering removed a substantial amount of ground water from their property

11

which caused their land to subside. The Deflers sought compensation for the alleged damages.

We observed that "[p]lanning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. . . . Operational functions are characterized by the execution or implementation of previously formulated policy." *City of Valparaiso v. Defler*, 694 N.E.2d at 1182 (internal citation omitted). Quoting from *Peavler*, we restated the following, which reinforces that the City is not entitled to immunity here:

> The distinction between planning and operational functions is a standard, rather than a precise rule. The focus must remain on the policy underlying governmental immunity. If the act is one committed to coordinate branches of the government involving policy decisions not reviewable under traditional tort standards of reasonableness, the government is immune from liability even if the act was performed negligently.

*Id*. at 1182-83 (quoting *Peavler v. Monroe Cnty. Bd. of Comm'rs*, 528 N.E.2d at 45. We concluded that "[t]his decision, although it required the City and its contractors to exercise professional judgment, is one which may be evaluated under traditional tort standards of reasonableness." *City of Valparaiso v. Defler*, 694 N.E.2d at 1183.

Here, the act of deciding how to prioritize the locations most in need, and by what method to resolve the stormwater issues in the City of Valparaiso, fall within those acts not reviewable under traditional tort standards of reasonableness. The construction of the Hotter Detention Facility in light of the survey information regarding elevations above sea level, however, more appropriately falls under review utilizing traditional tort standards of reasonableness. The trial court did not err by concluding that there was a genuine issue of

12

material fact precluding summary judgment in favor of the City on the Browns' negligence claim.

Having resolved the issue, we now address the City's assertion that the trial court erred by denying its motion to strike materials designated and relied upon by the Browns in defending against the City's motion for summary judgment. "A trial court has broad discretion in granting or denying a motion to strike." *City of Mishawaka v. Kvale*, 810 N.E.2d 1129, 1133 (Ind. Ct. App. 2004). "We will not reverse the trial court's decision unless prejudicial error is clearly shown." *Id*.

The City filed a motion to strike seven exhibits and various paragraphs of the affidavit of the Browns' expert, David McCormick, and Richard Brown's affidavit. The exhibits were 1) Exhibit 4, the Hotter Detention Facility Grading Plan prepared for the City by Donahue, 2) Exhibit 5, the Hotter Detention Facility Embankment Sections and Details prepared by Donahue, 3) Exhibit 6, the Hotter Detention Facility cross-section, 4) Exhibit 7, the colored flyover of the Hotter Detention Facility and immediate neighborhood, 5) Exhibit 8, a topographic survey of the Brown property with the 100 Year Flood Stage elevation designation, 6) Exhibit 9, a survey prepared by S. Price outlining various parcels of property acquired by the City, and 7) Exhibit 10, various photographs. The basis for the City's motion to strike the various paragraphs of the two affidavits was that the testimony lacked foundation and was based upon inadmissible hearsay evidence, i.e., the exhibits subject to the motion to strike, and the lack of professional background with regard to Richard Brown's affidavit.

First, with respect to all of the exhibits except Exhibit 10, each were produced by the City in response to the Browns' request for production of documents. The City, however, claims that the exhibits should have been excluded from the trial court's consideration because they contained inadmissible hearsay and were not properly authenticated by the Browns.

In *Smith v. City of South Bend*, 399 N.E.2d 846 (Ind. Ct. App. 1980), we were faced with a similar assertion. The City of South Bend was presented with a request for production of the job classification manual of the fire department by retired firefighters and policemen seeking to recover additional pension benefits to which they claimed they were entitled. In response to the request for production, the City of South Bend produced a copy of the original manual. When the firefighters and policemen attempted to introduce the copy of the manual as an exhibit, the City of South Bend objected to the admission of the exhibit because it was not the best evidence and was not properly authenticated. The trial court excluded the exhibit and the firemen and policemen appealed the trial court's decision.

We stated the following in our review of the trial court's ruling:

Where a party in control of an original document produces a copy it would be manifestly unfair to sustain its objection to the admission of the copy on the grounds that it is not the best evidence or properly authenticated. TR. 34(D) provides:

> "When a party or witness in control of a writing or document subject to examination under this rule or Rule 9.2(E) refuses or is unable to produce it, evidence thereof shall be allowed by other parties without compliance with the rule of evidence requiring production of the original document or writing as best evidence."

This rule contemplates that when documents are requested the originals will be

produced or else any best evidence objections to the admission of the copy produced are waived. Similarly any objections on the grounds of improper authentication are waived since the production of a document that is not genuine would be contrary to the notions of fair play and substantial justice which the discovery rules are designed to further.

*Smith v. City of South Bend*, 399 N.E.2d at 851.

The City correctly notes that *Smith* cites to T.R. 34(D), which explicitly provides an exception to the best evidence rule with respect to the production of documents. The holding in *Smith*, however, applies to both challenges presented in that appeal and in this appeal, i.e., best evidence and authentication. The holding of *Smith* with respect to authentication is an equitable extension of the exception to the best evidence rule. Further, the trial rule does not require that a party or witness in control of the document is the party who prepared the document. Consequently, we conclude that the trial court correctly denied the motion to strike those exhibits. To the extent that the City moved to strike portions of the affidavits because they relied upon the challenged exhibits, we conclude that the trial court likewise did not abuse its discretion by denying the motion to strike.

Exhibit 10 consisted of several photographs. The City argued that there was no foundation laid regarding who took the photographs, when they were taken, and what they depicted. Ind. Evidence R. 901 provides the method for authenticating or identifying evidence. Generally speaking, the rule requires the proponent of the evidence to produce evidence sufficient to support a finding that the item of evidence is what the proponent claims it is. With respect to photographic evidence, we have held that "[i]n authenticating a photograph, a witness must establish that the photograph is a true and accurate representation

of what it is meant to portray." *Troutwine Estates Dev. Co., LLC v. Comsub Design and Eng'g, Inc.*, 854 N.E.2d 890, 903 (Ind. Ct. App. 2006). We can find no evidence to support a finding that the photographs are true and accurate representations of what they claim. In that regard, the trial court abused its discretion in denying the City's motion to strike these photographs. This error, however, is harmless because the photographs did not bear on the ultimate question before the trial court, namely, whether the City was entitled to immunity under the discretionary-function provision of the Act.

Similarly, assuming for the sake of argument that the trial court abused its discretion by failing to exclude portions of Richard Brown's affidavit on the basis that he lacked the professional expertise to make the challenged statements, that error is harmless. The challenged testimony had no bearing on whether the City was immune from suit.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.