Cathy BRADY and William Brady,
Appellants–Plaintiffs,

v.

BROWN TOWNSHIP LIFE STAR
AMBULANCE SERVICE,
Appellee–Defendant.

No. 55A01–0305–CV–166.

Court of Appeals of Indiana.

Feb. 9, 2004.

Rehearing Denied May 18, 2004.

George Hòffman, III, Michael R. Auger,
Jones Hoffman & Admire, Franklin, IN,
Attorneys for Appellant.

David L. Ferguson, Karen Howe Fer-
nandez, Ferguson & Ferguson, Blooming-
ton, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Cathy Brady (Brady) and William Brady (William) (collectively "the Bradys"), appeal the trial court's order granting Appellee–Defendant, Brown Township Lifestar's (hereinafter "Lifestar") First and Second Motions for Summary Judgment on a Complaint for Damages claiming medical malpractice.

We reverse and remand.

### ISSUES

The Bradys' raise three issues on appeal, which we restate as follows:

(1) Whether the trial court properly granted summary judgment on Lifestar's Second Motion for Summary Judgment on the issue of Lifestar's assessment and subsequent transport of Brady as a Basic Life Support patient;

(2) Whether the trial court properly granted summary judgment on Lifestar's first Motion for Summary Judgment on the issue that Lifestar transported Brady to a proper facility; and

(3) Whether the trial court properly granted summary judgment on Lifestar's Second Motion for Summary Judgment on the issue that Lifestar did not delay Brady's transport nor did the forty-nine minutes that Brady was in its care cause or aggravate her injuries.

### FACTS AND PROCEDURAL HISTORY

On May 30, 1997, Brady was involved in a serious, head-on auto accident while traveling approximately 40 m.p.h. on Mann Road in Morgan County, Indiana. Lifestar, who employs paramedics, emergency medical technicians (EMTs), and ambulance drivers, received a dispatch to the scene of the accident at 8:03 a.m. The ambulance was en route to the scene of Brady's accident by 8:06 a.m., and arrived at the scene by 8:18 a.m., within fifteen minutes of the dispatch call.

All of Lifestar's personnel who responded to Brady's accident were appropriately trained and licensed by the State of Indiana. Specifically, Paula Timbs (Timbs) is a licensed EMT, Joyce Hittie (Hittie) is a certified paramedic, and Doug Merriman (Merriman) is a licensed EMT and ambulance driver. When Lifestar's ambulance arrived at the scene of the accident, Hittie assessed Brady. Based upon Hittie's assessment, she determined that Brady required Basic Life Support (BLS) not Advanced Life Support (ALS).[1]

While at the scene of the accident, Brady complained of chest and back pain, and had cuts and bruises on her legs and chest. As a result, Lifestar personnel gave Brady a cervical collar and placed her on a backboard for transport. Lifestar personnel then asked Brady which hospital she wanted to be taken to. Brady informed Lifestar that her husband should make the decision. Upon his arrival, William stated that they were both new to the area and

---

1. A paramedic makes the determination of whether a patient is BLS or ALS based on his/her assessment of the patient's condition, whether they are likely to become unstable, the accident scene, and the mechanism of the injury. The difference between an ALS assessment as opposed to a BLS assessment is that if a patient is assessed as ALS, the para-

medic, if one is available, accompanies the patient in the ambulance. A paramedic may administer drugs, intubate the patient, and start an IV; however, an EMT may not. If a patient is assessed as BLS, then the ambulance run is made without a paramedic; the accompanying EMT cannot administer drugs, intubate the patient, or start an IV.

that Methodist Hospital, located in Indianapolis, Indiana, was the only hospital they were familiar with. However, Lifestar personnel informed William that Community Hospital South (Community South) was the closest hospital to the accident scene. Thus, William agreed that Brady should be taken to Community South.

Lifestar personnel transported Brady to Community South within approximately 18 minutes. When the ambulance left the scene of the accident to take Brady to Community South, her condition appeared stable and non-life threatening. As a result, Lifestar did not operate its sirens or lights on the ambulance. However, when the ambulance was approximately one minute away from Community South, Brady's condition worsened. Thus, Lifestar turned on the emergency lights and sirens. The ambulance left the scene of the accident at 8:49 a.m. and arrived at 9:07 a.m. Brady was in Community South's care from 9:07 a.m. forward. She was then transferred to Methodist Hospital at approximately 11:10 a.m. and was taken to surgery at approximately 12:20 p.m.

On June 1, 1999, the Bradys filed their Complaint in the Marion Circuit Court against Lifestar, Paula Limes,[2] Merriman, and Linda Rowe, claiming three separate causes of action. In particular, Count I of the complaint alleged that Lifestar's negligence exacerbated the injuries Brady sustained from her car accident; Count II alleged that Lifestar's driver, Merriman, was not properly trained and that Lifestar negligently entrusted its ambulance to him; and Count III alleged loss of consortium by William. On September 2, 1999, the cause was transferred to the Morgan Circuit Court. The individual defendants were dismissed by agreement, leaving Lifestar as the properly named defendant.

On March 23, 2001, Lifestar filed its first Motion for Summary Judgment, Designation of Evidence in Support of its Motion for Summary Judgment, and its Memorandum of Law in Support of Motion for Summary Judgment. In its motion, Lifestar moved for summary judgment on the issues of whether Lifestar properly treated and transported Brady and whether Lifestar properly trained its employees and entrusted the ambulance to Merriman. Lifestar supported its summary judgment motion with excerpts from the Bradys' depositions of Timbs, Merriman, Hittie, and EMT David Davis.

On November 14, 2001, the Bradys filed their Response to Defendant's first Motion for Summary Judgment, Designation of Evidence in Response, and a Memorandum of Law in Opposition to Defendant's Motion. In the Bradys' response, they added an allegation that was not in their Complaint, namely that Lifestar improperly designated the ambulance run as BLS instead of ALS. The Bradys designated excerpts from the depositions of Dr. James Nossett (Dr. Nossett), Timbs, and Hittie.

On January 11, 2002, the trial court heard oral argument on Lifestar's first Motion for Summary Judgment. At the hearing, Lifestar filed its Pinpoint Designations of Material Already Designated. The pinpoint designations were to Dr. Nossett's deposition, which did not exist when Lifestar filed the original motion, but which was designated by Bradys' summary judgment response. Additionally, Lifestar filed its Motion to Strike portions of the Bradys' designated evidence. The trial court granted the Bradys additional time to file their brief in response to Lifestar's Motion to Strike, with allowance for Lifestar to respond to the Bradys' filing.

---

2. We note that this is the only reference to "Paula Limes" in the record.

On January 30, 2002, the Bradys filed their Plaintiffs' Amended Designation of Evidentiary Materials in Response to Defendant's Motion for Summary Judgment, Plaintiffs' Amended Designation of Genuine Issues of Fact Which Preclude the Entry of Summary Judgment, and Plaintiffs' Memorandum of Law in Response to Defendant's Motion for Summary Judgment. On February 11, 2002, Lifestar filed its Response to Plaintiffs' Post Summary Judgment Hearing Filings.

On March 1, 2002, the trial court entered its Ruling on Defendant's first Motion for Summary Judgment. In its ruling, the trial court denied the Bradys' Motion for Leave to File an Amended Response to Defendant's Motion for Summary Judgment in part, striking the Bradys' Amended Designation of Genuine Issues of Material Facts, the Bradys' Amended Memorandum of Law, the Bradys' Amended Designation of Evidentiary Materials, Part 4, and the Affidavit of William. The trial court considered only the parts of Defendant's Response to Plaintiffs' Post Summary Judgment Hearing filings that pertained to striking the Bradys' filings. Additionally, the trial court granted Lifestar's Motion to Strike as to portions of the Timbs' deposition at page 60, lines 3–11.

Further, the trial court granted summary judgment on Count One of the Bradys' Complaint. The court found that there were no genuine issues of material fact on the issue of Timbs, Merriman, and Davis being properly trained, and of Brady going to Community South as an appropriate hospital capable of handling her injuries. However, the trial court denied Lifestar's first Motion for Summary Judgment in part on the issues of whether Lifestar negligently delayed Brady's transport to Community South and whether Lifestar properly assessed Brady as BLS.

On August 15, 2002, Lifestar filed its Second Motion for Summary Judgment. The trial court allowed the filing of Lifestar's Second Motion for Summary Judgment because Lifestar based its second motion on an additional affidavit from Dr. Nossett, which was not available to Lifestar for its first Motion for Summary Judgment. Lifestar's Second Motion for Summary Judgment raised the issues of negligent delay in transportation and negligent assessment of Brady as requiring BLS. These two issues were previously raised in Lifestar's first Motion for Summary Judgment; however, the trial court denied Lifestar's first motion on those particular issues.

On that same date, Lifestar also filed its Second Memorandum of Law in Support of Second Motion for Summary Judgment and Second Designation of Evidence in Support of Second Motion for Summary Judgment. On January 9, 2003, the Bradys filed their Response to Defendant's Second Motion for Summary Judgment, Designation of Evidentiary Materials in Response to Defendant's Second Motion for Summary Judgment, and Memorandum of Law in Response to Defendant's Second Motion for Summary Judgment. On March 11, 2003, the trial court held a hearing on Lifestar's Second Motion for Summary Judgment.

On March 27, 2003, the trial court entered its Order on Defendant's Second Motion for Summary Judgment. The trial court found that Lifestar made a prima facie showing that there was no genuine issue of material fact and that Lifestar did not negligently cause a delay in Brady's transport to Community South. The trial court also found that the forty-nine minutes that Brady was in Lifestar's care did not cause or exacerbate her injuries. Further, the trial court held that Lifestar's assessment of Brady as a BLS patient did

not cause or exacerbate her injuries. In sum, the trial court granted summary judgment as a matter of law to Lifestar.

The Bradys now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court. *Miller v. NBD Bank, N.A.,* 701 N.E.2d 282, 285 (Ind.Ct.App.1998). We do not reweigh the evidence designated by the parties. *Turley v. Hyten,* 751 N.E.2d 249, 251 (Ind.Ct. App.2001). Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Schoknecht v. Hasemeier,* 735 N.E.2d 299, 301 (Ind.Ct.App. 2000).

The moving party bears the burden of showing, prima facie, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden has been met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the non-moving party, so as not to deny that party its day in court. *Id.*

### II. Lifestar's Assessment of Brady as BLS

■ First, the Bradys contend that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on the issue of Lifestar's assessment of Brady at the scene of the accident. Specifically, the Bradys argue that there is a genuine issue of material fact regarding whether Brady should have been assessed as ALS rather than BLS. We agree.

■ In a medical malpractice action based upon negligence the plaintiff must establish; (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of the defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). In support of its Second Motion for Summary Judgment, Lifestar submitted a second affidavit opinion from Dr. Nossett, the Medical Director of Lifestar. In the affidavit, Dr. Nossett sets out the standard for assessing a patient as either ALS or BLS. Dr. Nossett explains the difference between a patient assessed as BLS as opposed to a patient assessed as ALS. As previously mentioned, if a patient is assessed as ALS, then a paramedic accompanies the patient on the ambulance run; however, if a patient is assessed as BLS, then an EMT accompanies the BLS patient. The difference is that a paramedic may intubate, start an IV, and administer drugs; whereas, an EMT may not perform those functions. Dr. Nossett concluded that a paramedic would not have intubated or administered drugs to Brady before her condition changed.

In response, the Bradys submitted Dr. Nossett's deposition testimony. In order to refute Lifestar's evidence, the deposition testimony needed to set out the applicable standard of care and a statement that the treatment in question fell below that standard. *See Oelling,* 593 N.E.2d at 191. Our review of the record reveals that the Bradys clearly proved that a genuine issue of material fact exists for trial. In particular, the record reveals that Dr.

Nossett's deposition testimony concluded that Brady was improperly assessed at the scene of the accident and should have been assessed as ALS. Although, Dr. Nossett concluded in his second affidavit that Brady would not have required intubation or drugs; nevertheless, in his deposition, Dr. Nossett stated, "I feel most likely [this] would have been an ALS run." Additionally, when asked if Brady should have been assessed ALS, Dr. Nossett replied, "Yes. Yes." (Appellant's App. p. 218). Thus, the Bradys' submitted deposition set out the applicable standard for assessing a patient and concluded that Lifestar failed to meet this standard. *See Oelling,* 593 N.E.2d at 191.

Based upon the inconsistencies in Dr. Nossett's deposition and affidavit, we conclude that there is a genuine issue of material fact regarding whether Brady was properly assessed at the scene of the accident. Dr. Nossett's opinion that Brady would not have been intubated or administered drugs arguably contradicts his deposition conclusion that Brady should have been assessed as ALS given her shortness of breath, complaint of back and neck pains, and the scene of the accident. Therefore, it is our conclusion that Dr. Nossett's deposition testimony and second affidavit raised various inferences that a genuine issue of material fact existed regarding Lifestar's assessment of Brady.

Furthermore, the Bradys also submitted the affidavit of John Linehan (Linehan), a practicing paramedic. Linehan clearly states in his affidavit that Lifestar fell below the standard of care required for assessing a patient. On the contrary, Lifestar argues that Linehan's affidavit does not set forth specific facts showing there is a genuine issue for trial. However, we disagree and believe that Linehan's affidavit meets the specificity require-

ments of Ind. Trial Rule 56(E). *See* T.R. 56(E).

Consequently, we find that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on this issue. Accordingly, we reverse and remand the trial court's award of summary judgment in Lifestar's favor on the issue of whether Brady was properly assessed at the scene of the accident.

## II. *Lifestar's first Motion for Summary Judgment*

■ Next, the Bradys contend that the trial court erred in granting Lifestar's first Motion for Summary Judgment. Specifically, the Bradys assert that the trial court erred in granting Lifestar's motion with respect to the issue of whether Brady was transported to a proper hospital. Conversely, Lifestar argues that Community South was an appropriate facility to transport Brady given its close distance to the accident scene and the hospital's capabilities. As a result, Lifestar maintains that the trial court did not err in granting their first Motion for Summary Judgment on this issue.

In support of its motion for summary judgment, Lifestar submitted the deposition opinion of Dr. Nossett. In response, the Bradys also submitted Dr. Nossett's deposition testimony, in an attempt to show a genuine issue for trial. As mentioned above, to refute Lifestar's evidence, the testimony needed to set out the applicable standard of care and a statement that the treatment in question fell below that standard. *See Oelling,* 593 N.E.2d at 191. Based upon the Bradys' designations of Dr. Nossett's deposition testimony, we find that a genuine issue of material fact was raised regarding whether Lifestar properly transported Brady to an appropriate hospital capable of handling her injuries.

Particularly, our review of the record indicates that Dr. Nossett's conclusion that Brady was transported to a proper facility was based upon Lifestar's assessment of her at the time of the transportation. In his deposition, Dr. Nossett's opined as follows:

[T]he patient was taken and I sense that there might be some issue with the fact that the patient was taken to [Community South] versus going on up to Methodist Hospital. I don't know exactly how far the distance is. Although I actually used to work at Community South years ago.... But[,] Community South is clearly a closer hospital. They also are certainly capable of stabilizing patients if they're crashing. Those who are potentially seriously injured, but need just a total assessment.... And [Community South] is a reasonable place to take a patient who has been in a car accident. *Their assessment and again we have to take their word that this is how they assess the patient. Their assessment was of a patient who appeared to be stable.* In my sense appeared to have potentially significant injury, but at least at that point was stable, awake and alert.... *Again, all we can take is what their assessment is and can't hindsight this at that point.*

(Appellant's App. pp. 72–4) (emphasis added). However, as we previously determined in section I, Dr. Nossett's deposition and affidavit testimony clearly show conflicting testimony regarding the appropriateness of Lifestar's assessment at the time of Brady's transportation. Thus, Dr. Nossett's testimony that Lifestar improperly assessed Brady at the scene of the accident but nevertheless transported her to an appropriate hospital does not render his testimony consistent. Specifically, Lifestar's assessment of Brady as BLS as opposed to ALS directly prompted their decision to transport her to Community South. Further, Dr. Nossett's conclusion that Brady was transported to an appropriate facility is based upon the proposition that she appeared to be stable at the time of the transportation. Nonetheless, the record shows that Dr. Nossett concluded that Lifestar's assessment of her that she appeared stable at the time of transportation was an incorrect assessment. Consequently, we believe that a genuine issue of material fact exists that is appropriate for trial.

Additionally, Dr. Nossett stated in his deposition that other medical professionals who work in trauma centers would not agree with his conclusion that Community South was an appropriate facility and that thirty percent of doctors would also disagree and state that a trauma center is a better facility to transport Brady. Thus, these statements give rise to an inference that Dr. Nossett believes other medical professional would not agree with his opinion and that a genuine issue of material fact was raised regarding whether Community South was a proper hospital to transport Brady. Although Lifestar asserts that these statements are mere speculation and not supported by facts in evidence; we nevertheless disagree with this assertion.

With the above in mind, it is our conclusion that Dr. Nossett's testimony raised various inferences that a genuine issue of material fact existed regarding Lifestar's transport of Brady to an appropriate hospital. As a result, we find that the trial court erred in granting Lifestar's first Motion for Summary Judgment on this issue. Consequently, we reverse the trial court's award of summary judgment in Lifestar's favor on the issue of whether Lifestar properly transported Brady to an appropriate hospital.

### III. Lifestar's Transportation Time of Brady to an Appropriate Hospital

■ Lastly, the Bradys argue that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on the issue of whether Lifestar caused a delay in transporting Brady to an appropriate hospital. In the present case, the record shows that Lifestar designated the second affidavit of Dr. Nossett in support of its argument that summary judgment on this issue was warranted. In the affidavit, Dr. Nossett concluded that "the amount of time during which Brady was in Lifestar's care was reasonable." (Appellant's App. p. 191). Further, the affidavit states, "the amount of time during which Brady was in Lifestar's care, 49 minutes, did not aggravate or cause her injuries." (Appellant's App. p. 191). Specifically, the record indicates that Lifestar received the dispatch call, traveled to the accident scene, extracted Brady from her car, assessed her condition, and transported her to Community South in 64 minutes.

In response, the Bradys designated the affidavits of Linehan and Dr. Joel Feldman (Dr. Feldman), a licensed physician specializing in vascular surgery. As previously mentioned, Linehan determined in his affidavit that Lifestar's treatment of Brady fell below the standard of care. Dr. Feldman's affidavit concluded that Brady's injuries worsened due to the delay in surgical treatment. Although the Bradys concede that Brady was only in Lifestar's care for a relatively short amount of time compared to the total amount of time she received medical treatment from Community South and Methodist Hospital; nevertheless, the Bradys argue that Lifestar was negligent in transporting Brady to Community South rather than going to Methodist Hospital where Brady was eventually transported for surgery. The Bradys maintain that this delay caused or exacerbated Brady's injuries.

In reviewing the evidence submitted before this court, we are mindful of the principle that we do not reweigh the evidence designated by the parties. *Turley*, 751 N.E.2d at 251. Rather, we construe the evidence in the light most favorable to the non-moving party. *Id.* In keeping with this principle, we find that the Bradys have met their burden by setting forth specific facts demonstrating a genuine need for trial. *See Schoknecht*, 735 N.E.2d at 301. Particularly, Lifestar offered Dr. Nossett's affidavit to prove that a genuine issue does not exist regarding whether Lifestar caused a delay in transporting Brady to an appropriate facility. In the affidavit, Dr. Nossett stated that Lifestar's assessment and transport of Brady was reasonable and that they did not take any more time than was necessary. Thus, the issue of whether Lifestar caused a delay in transporting Brady to an appropriate hospital is directly related to Lifestar's assessment and subsequent transport of Brady to Community South based upon their assessment of her at the scene of the accident. However, as previously determined in sections I and II, the inconsistencies in Dr. Nossett's deposition and affidavit testimony regarding Lifestar's assessment and transport of Brady proves that a genuine issue of material fact existed. Moreover, the Bradys' designated opinion of Dr. Feldman opined that Brady's condition worsened due to the improper assessment and transport of her to an inappropriate hospital.

Therefore, we cannot conclude that there is no genuine issue of material fact regarding this issue. Accordingly, we find that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on the issue of whether Lifestar caused a delay in transporting Brady.

Consequently, we reverse and remand the trial court's award of summary judgment to Lifestar on this issue.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on the issue of whether Lifestar properly assessed Brady at the scene of the accident. It is our conclusion that there is a genuine issue of material fact appropriate for trial regarding this issue. We further hold that a genuine issue of material fact exists regarding whether Lifestar properly transported Brady to an appropriate facility. As a result, we conclude that the trial court erred in granting Lifestar's first Motion for Summary Judgment on this issue. Lastly, we find that the trial court erred in granting Lifestar's Second Motion for Summary Judgment on the issue of whether Lifestar caused a delay in transporting Brady to an appropriate hospital. Accordingly, we remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, J., and FRIEDLANDER, J., concur.