CITY OF BLOOMINGTON UTILITIES DEPARTMENT, Appellant–Defendant,

v.

Misty WALTER, Micky Day, Leslie Cadavid and Hernan Cadavid, Appellees–Plaintiffs.

No. 53A01–0807–CV–356.

Court of Appeals of Indiana.

April 15, 2009.

Transfer Denied July 23, 2009.

Andrew P. Wirick, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorney for Appellant.

Michael T. Scarton, Shean Law Offices, Bloomington, IN, Attorney for Appellees.

**OPINION**

KIRSCH, Judge.

The City of Bloomington Utilities Department ("CBU") brings this interlocutory appeal challenging the trial court's denial of its motion for summary judgment. CBU raises the following restated issue: whether the trial court erred in failing to find that CBU is immune from liability under the Indiana Tort Claims Act, Indiana Code chapter 34–13–3

("ITCA"), for damage caused by sewage flowing from its sewer pipes into the home of one of its customers.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

Leslie and Hernan Cadavid (together, the "Cadavids") are husband and wife and owners of a rental property located in Bloomington, Indiana. In November 2005, Misty Walter and Micky Day rented the downstairs apartment of the rental from the Cadavids. CBU provided the residence with sewer services.

Around 8:00 a.m. on November 15, 2005, Walter and Day noticed that their bedroom rug was wet. Day immediately called the Cadavids, who, in turn, contacted CBU about the problem. Rick Schroeder, CBU's Assistant Superintendent for lift stations, booster stations, and sewer cleaning, responded to the call and determined that the blockage was in an eight-inch sewer line leading to the rental's lateral line. CBU is responsible for the proper maintenance and operation of the City of Bloomington's (the "City") public sewer lines that are eight or more inches in diameter.[1] Lateral lines from a sewer main are the customer's responsibility. CBU employees had the blockage cleared by 12:45 p.m., but by that time, the property within the apartment had been severely damaged by sewage. Schroeder could not determine the exact cause of the blockage, but suspected that it may have been tree roots and grease.

The Cadavids notified their insurance carrier about their loss caused by the sewage; however, the insurance company denied their claim because the blockage occurred within the City's portion of the system. In compliance with the ITCA, the Cadavids sent a Notice of Tort Claim to the City and CBU (together, "Defendants"), but Defendants denied the claim. On May 3, 2006, Walter and Day sent their Notice of Tort Claim to Defendants, which claim Defendants likewise denied.

On March 21, 2007, Walter, Day, and the Cadavids (collectively, "Homeowners") filed their complaint under the ITCA against Defendants alleging that Defendants negligently planned, designed, installed, operated, maintained, and controlled the sewer lines serving the rental. Defendants filed an answer to the complaint and a motion for summary judgment claiming: (1) CBU's creation of a schedule for inspecting sewer pipes was a discretionary function for which it was immune under Indiana Code section 34–13–3–3(7); and (2) even if Defendants were not immune, Defendants did not have notice of the problem and an opportunity to repair the condition prior to the November 15, 2005 incident.

■ The trial court scheduled a hearing on Defendants' motion for summary judgment. In May 2008, Defendants each made a separate Qualified Settlement Offer ("QSO") to each of the Homeowners. The Homeowners accepted the City's QSO, but did not accept CBU's. Following a hearing on summary judgment, the trial court denied CBU's motion for summary judgment finding that: (1) CBU was not engaging in a discretionary function that warranted immunity; and (2) there was a genuine issue of material fact regarding sufficient notice. On August 28, 2008, all parties stipulated to the dismissal of the City from the lawsuit. The following day, this court granted CBU's petition for interlocutory appeal under Indiana Appellate

---

1. In his deposition, Schroeder noted that CBU is separate from the City's other departments but is, nevertheless, "a City operation." *Appellant's App.* at 68.

Rule 14(B). CBU now appeals.[2] Additional facts will be added as necessary.

## DISCUSSION AND DECISION

Our standard of review is well settled. Summary judgment is appropriate only if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *see N. Ind. Pub. Serv. Co. v. Bloom,* 847 N.E.2d 175, 180 (Ind.2006); *Ind. Dep't of Envtl. Mgmt. v. Constr. Mgmt. Assocs.,* 890 N.E.2d 107, 111–12 (Ind.Ct.App.2008). On appeal, we apply the same standard as the trial court and resolve disputed facts or inferences in favor of the non-moving party. *Savieo v. City of New Haven,* 824 N.E.2d 1272, 1274 (Ind.Ct.App.2005), *trans. denied.* All doubts as to the existence of a material issue must be resolved against the moving party. *Constr. Mgmt. Assocs.,* 890 N.E.2d at 112.

The party appealing a summary judgment ruling has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001). For a defendant to prevail, the defendant must show that the undisputed material facts negate at least one of the elements essential to the plaintiff's claim, or that a valid affirmative defense bars the plaintiff's claim. *McDonald v. Lattire,* 844 N.E.2d 206, 210 (Ind.Ct.App.2006). The trial court's findings and conclusions are not binding upon this court, but do facilitate appellate review and offer insight into the trial court's rationale for its decision. *Savieo,* 824 N.E.2d at 1274.

■■■ Here, Homeowners alleged that CBU negligently maintained and controlled the sewer lines by failing to clear severe root invasion from the sewer pipes. As a proximate result of this negligence, the Homeowners' sewer line became blocked, sewage flowed into the home, and the sewage caused damage to the Homeowners' real and personal property. *Appellant's App.* at 16. In its motion for summary judgment, CBU argued that its conduct qualified for governmental immunity as a discretionary function under Section 3 of the ITCA. In the alternative, CBU argued that it had insufficient notice and opportunity to remedy the problem in the sewer line. The trial court denied CBU's motion for summary judgment.

■■■ The ITCA governs tort claims against governmental entities and public employees and partially reinstated the sovereign immunity abolished by our Supreme Court in *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972). *Gary Cmty. Sch. Corp. v. Boyd,* 890 N.E.2d 794, 799 (Ind.Ct.App.2008), *trans. denied; Brown v. Alexander,* 876 N.E.2d 376, 380 (Ind.Ct.App.2007), *trans. denied* (2008). "Pursuant to the ITCA, 'governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA.'" *Brown,* 876 N.E.2d at 380 (quoting *Oshinski v. N. Ind. Commuter Transp. Dist.,* 843 N.E.2d 536, 543 (Ind.Ct.App.

---

2. On appeal, CBU raises only the issue of whether the trial court erred in failing to find that CBU is immune from liability under Indiana Code section 34–13–3–3(7). In the conclusion section of its brief, however, CBU asserts that summary judgment should also be granted because "the Appellant had no prior notice and opportunity to repair" the sewer. *Appellant's Br.* at 13. CBU does not offer any reasoning or cite to any authority to support the proposition that it did not have notice or that lack of notice, alone, warrants summary judgment. As such, CBU has waived this argument on appeal. *City of Terre Haute v. Pairsh,* 883 N.E.2d 1203, 1208 (Ind.Ct.App. 2008), *trans. denied.*

2006)). "A governmental entity ... is not liable if a loss results from ... [t]he performance of a *discretionary function ....*" Ind.Code § 34–13–3–3(7) (emphasis added). The party claiming immunity bears the burden of establishing that its conduct comes within the ITCA.[3] *Boyd,* 890 N.E.2d at 800.

CBU asserts that, contrary to the trial court's findings, it is entitled to immunity for the discretionary function of enacting and following its Capacity, Management, Operations and Maintenance ("CMOM") Program—a program that set forth guidelines for CBU to inspect, clean, and repair the City's sewer system. *Appellant's Br.* at 6, *Appellant's App.* at 234. Inasmuch as CBU contends that it is not liable because the acts it performed here were purely discretionary, we note that, in *Peavler v. Monroe County Bd. of Comm'rs,* 528 N.E.2d 40 (Ind.1988), our Supreme Court adopted the "planning/operational" test as the standard for defining discretionary acts under the ITCA. 528 N.E.2d at 45. In *Peavler,* our Supreme Court explained that the word "discretionary" refers to the exercise of political power that is held accountable only to the Constitution or the political process. *Id.* The issue of whether an act is discretionary and therefore immune from liability is a question of law for the trial court to resolve. *Id.* at 46. The essential inquiry is whether the challenged act is the type of function that the legislature intended to protect with immunity. *Id.* Discretionary immunity is provided to governmental units for undertaking a policy-oriented decision-making process. *Beck v. City of Evansville,* 842 N.E.2d 856, 862 (Ind.Ct. App.2006), *trans. denied.* "The decision-makers can adopt a policy that recom-

mends action, recommends action to be phased in over time, recommends no action, or recommends a combination of action and inaction." *Id.* It does not matter what the adopted policy calls for, only that a policy was adopted. *Id.*

CBU cites to *Beck v. City of Evansville* to support its claim of immunity, arguing as follows:

> In *Beck,* homeowners brought claims of negligence, nuisance, and inverse condemnation against the city resulting from flood damaged [sic] allegedly caused by inadequate sewer systems. Prior to this flood, the City of Evansville had developed a plan to address sewer problems and set priorities, as to which problems would be fixed, after weighing competing interests. The City of Evansville moved for summary judgment claiming, among other things, governmental immunity under the [ITCA]. The trial court granted defendant's motion for summary judgment and plaintiffs appealed. The court of appeals used the factors enumerated by *Peavler* to determine whether Evansville was entitled to governmental immunity. The majority of the discussion focused on the fact that the city developed a plan. The court of appeals upheld the trial court's decision because in their view "the City was performing a discretionary function when it commissioned and adopted the Plan."

*Appellant's Br.* at 7 (internal citations omitted). CBU argues that, like Evansville, it satisfied the factors in *Peavler* by establishing a plan for using a finite amount of resources to make regular inspections of the City's sewer system. *Id.*

While our court found immunity under the discretionary function exception in

---

**3.** On appeal, Homeowners also argue that CBU has not designated any evidence to show that CBU qualifies as a governmental entity.

*Appellant's Br.* at 10. Finding, as we do, that CBU was not performing a discretionary function, we do not reach this issue.

*Beck,* the facts of Beck here are distinguishable. In *Beck,* plaintiffs lived in naturally low-lying areas, which had been swamps prior to development. *Beck,* 842 N.E.2d at 858. Flooding of plaintiffs' property was likely in the event of extraordinary rainfall because the sewers could not meet capacity. *Id.* Evansville increased its sewer rates to pay for the city's storm water and sanitary wastewater issues. *Id.* Because it was not economically feasible to fix Evansville's entire storm water system at one time, the city commissioned a master plan to identify problems and provide solutions in a prioritized manner. *Id.* The plan identified plaintiffs' property as being within a neighborhood in need of attention, but labeled it a second-tier project to be completed at a later date. Prior to enactment of the second-tier project, a severe thunderstorm caused plaintiffs' neighborhood to flood. *Id.* at 859. Thereafter, plaintiffs sued for damages alleging that the city "was negligent in failing to adequately control the flooding that resulted in the loss of use of their residences." *Id.* The trial court granted Evansville summary judgment on the basis that the city's commission and adoption of the master plan was a discretionary function. *Id.* at 860.

In explaining its decision, this court noted that the plan specifically addressed the need for amelioration of the plaintiffs' properties but, after weighing competing interests and setting priorities under the plan, determined that the plaintiffs' property should be completed as part two of the project. *Id.* at 862. "While a portion of the Plan was completed before the flood damage occurred to the [plaintiffs'] residences much of it was still being implemented at the time of the flooding, including the plan to address the problem in the [plaintiffs'] neighborhoods." *Id.* Our court affirmed the trial court's grant of summary judgment finding that Evansville had

a comprehensive plan of maintenance and service for its sewers, that the city was performing a discretionary function when it adopted the plan, and that plaintiffs failed to present evidence that the city negligently operated and maintained the sewer. *Id.* at 863.

We find that our decision today is best guided by our Supreme Court's reasoning in *Greathouse v. Armstrong,* 616 N.E.2d 364 (Ind.1993) and this court's decision in *City of Valparaiso v. Defler,* 694 N.E.2d 1177 (Ind.Ct.App.1998), *trans. denied.* In *Greathouse,* a motorcyclist died after his motorcycle collided with a bull that had wandered onto the highway. 616 N.E.2d at 366. Two hours prior to the collision, the sheriff's department was notified that cattle were loose. The dispatcher attempted to identify and contact the owner, but was not successful. *Id.* The decedent's family initiated a wrongful death action claiming that the sheriff's dispatcher was negligent in his handling of the problem. The sheriff sought immunity claiming that the dispatcher's acts of prioritizing calls and considering the availability of scarce resources, required policy considerations. *Id.* at 367. The sheriff argued that the dispatcher's actions were discretionary functions and, therefore, immune. Finding that the dispatcher was merely following a pre-determined policy for locating the owners of stray livestock, our Supreme Court concluded that the dispatcher's decisions were "merely operational" and denied the sheriff's request for discretionary function immunity. *Id.*

In *Defler,* the City of Valparaiso contracted with McMahon to recommend solutions for sewer line problems. 694 N.E.2d at 1178. Based upon an evaluation of alternative solutions presented by McMahon, the city decided to install a sewer lift station, and then contracted with Woodruff to construct the lift station on a city-owned

easement adjacent to the Deflers' property. In the construction of the lift station, water was removed from the Deflers' property, which caused the land to subside. The Deflers sued the city, McMahon, and Woodruff for the damage to their land. The city moved for summary judgment alleging, in part, that it was immune from liability because its decision to build the station was a discretionary function. The trial court denied summary judgment. In affirming the trial court's decision, our court agreed that, while the decision to correct the sewer problem by building a lift station was a discretionary function, the Deflers had not challenged that decision. *Defler*, 694 N.E.2d at 1183. "Instead, the Deflers [had] challenged the method by which the lift station was constructed; specifically, the decision to dewater the construction site to such an extent that the Deflers' land subsided." *Id.* Our court held, "This decision, although it required [Valparaiso] and its contractors to exercise professional judgment, is one which may be evaluated under traditional tort standards of reasonableness." *Id.*; *see Borne v. Nw. Allen County Sch. Corp.*, 532 N.E.2d 1196, 1200 (Ind.Ct.App.1989), *trans. denied* (professional judgments immune only if they can be characterized as policy decisions).

Here, Homeowners alleged that CBU "negligently planned, designed, installed, operated, maintained, and controlled the sewer lines serving [the Homeowners]...." *Appellant's App.* at 16. Specifically, Homeowners alleged that CBU's failure to exercise reasonable care in the maintenance of its lines resulted in severe root blockage of its lines, which in turn caused a sewage back-up. *Id.* CBU bore the burden to show that a policy decision, consciously balancing risks and benefits, took place regarding the method by which CBU cleaned and maintained its sewers on a daily basis.

CBU designated portions of the CMOM Program, which included the following:

CBU is responsible for the proper operation and maintenance of the public gravity sewers that are eight inches in diameter and larger and public force mains....

. . . .

The purpose of a maintenance program is to maintain or restore the capacity and integrity of the collection system to its intended design and function. An effective maintenance program will maintain system capacity, reduce the potential of [Sanitary Sewer Overflows], identify sources of infiltration and inflow (I/I) for corrective action, and reduce the occurrences of corrective maintenance, including emergency sewer repairs.

CBU's Transmission and Distribution (T & D) Department is responsible for the maintenance of the water distribution, sanitary collection and storm water drainage systems. On an as-needed basis, T & D responsibilities include the installation and/or repair of water, sewer, and storm water infrastructure.

. . . .

The purpose of the sewer cleaning program is to remove debris, grease, roots and other obstructions from the sewers (12-inches in diameter and smaller) to maintain their capacity. Large diameter sewers are cleaned on an as-needed basis.

T & D has two combination sewer cleaning trucks. They use a high-pressure stream of water to dislodge and transport debris from the sewer to a downstream manhole. The water removes fats, oil, grease, sediment, or other materials that may interfere with the proper operation of the sewer....

. . . .

The purpose of the root control program is to remove roots that obstruct the flow of sewage and damage pipe structure. Root intrusion through structural defects or at pipe joints is a major contributor to blockages. Repair of the defects that contribute to a buildup of material in the pipe (i.e. roots) should be evaluated as part of a rehabilitation program, since the defects would always be a maintenance problem.

CBU uses mechanical root cutters that use a circular saw blade ... Chemicals are not used by CBU for root control. Root control work orders are generated from sewer cleaning crews when they have problems moving their equipment through a sewer segment. Also, root control work orders are generated when roots are noted while the sewer segment is being televised.

*Appellant's App.* at 247, 250, 251, 252.

The CMOM Program reflected both policy decisions and guidelines for sewer operation. CBU engaged in policy-oriented decision-making when it determined which part of the system it would maintain (public gravity sewers equal to or greater than eight inches in diameter and public force mains) and that it would not use chemicals for root control. However, much of the CMOM Program merely set forth "things that [CBU has] been doing for years." *Appellant's App.* at 256.

█ The planning/operational test allows us to " 'distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity.' " *Boyd*, 890 N.E.2d at 800 (quoting *Greathouse*, 616 N.E.2d at 366–67). Not every government decision is immune. *See Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 282 (Ind.1994) ("If policy formulation included every act involving choice, judgment, or decision making, every act would fall within discretionary function exception."). While the decisions regarding sewer cleaning required CBU and its employees to exercise professional judgment, these decisions may be evaluated under traditional tort standards of reasonableness. *Defler*, 694 N.E.2d at 1183. We find no designated evidence in the record here on appeal to convince us that CBU's actions involved the formulation of policy that would entitle it to immunity under Indiana Code section 34–13–3–3(7). We affirm the trial court's denial of summary judgment and remand to the trial court for further proceedings.

Affirmed and remanded.

BAKER, C.J., and NAJAM, J., concur.