Katherine FARLEY and James Paul, On Behalf of Themselves and All Others Similarly Situated, Appellants–Plaintiffs,

v.

HAMMOND SANITARY DISTRICT, Appellee–Defendant.

No. 45A05–1008–CT–481.

Court of Appeals of Indiana.

Sept. 12, 2011.

Rehearing Denied Dec. 12, 2011.

David R. Dubin, Macuga, Liddle & Dubin, P.C., Detroit, MI, Marshall P. Whalley, Marshall P. Whalley & Associates, P.C., Merrillville, IN, Attorneys for Appellants.

Joseph M. Dietz, Andrew M. Sumerford, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BARTEAU, Senior Judge.

Plaintiffs–Appellants Katherine Farley and James Paul, on behalf of themselves and all others similarly situated (collectively, "Farley and Paul"), appeal the trial court's grant of summary judgment to Defendant–Appellee Hammond Sanitary District ("HSD"). We affirm in part, reverse in part, and remand.

*ISSUES*

Farley and Paul raise three issues, which we restate as:

I. Whether the trial court abused its discretion by striking portions of an expert witness' affidavit that Farley and Paul submitted in opposition to HSD's Amended Motion for Summary Judgment.

II. Whether the trial court erred by granting summary judgment to HSD on Farley and Paul's tort claims.

III. Whether the trial court erred by granting summary judgment to HSD on Farley and Paul's individual claims for unconstitutional taking of personal property.

*FACTS AND PROCEDURAL HISTORY*

HSD operates a sewer system that serves Hammond, Indiana. That sewer system also receives wastewater from the neighboring communities of Munster, Whiting, Highland, and Griffith. The system is, for the most part, a combined sewer system, which means that a majority of its pipes carry both sanitary sewage and storm water.

In the early morning hours of July 26, 2007, a severe storm struck Hammond. Instruments at HSD's headquarters indicated that up to three inches of rain fell in the city in a one-hour period. During and after the storm, sewage backed up into the basements of dozens of Hammond residences via their sewer drain lines, causing damage to homes and to personal property. Farley and Paul were among those

who discovered sewage in their basements after the storm.

On November 30, 2007, Farley, Paul, and Kim Massie[1] filed a class action complaint against HSD and the City of Hammond[2] alleging negligence, trespass, nuisance, res ipsa loquitur, and an unconstitutional taking under the Indiana Constitution. Farley and Paul also filed a motion for class certification. After briefing by the parties and a hearing, the trial court denied the motion for class certification. Next, HSD filed a Motion for Summary Judgment. Subsequently, the members of the rejected class filed seven smaller class action lawsuits. The plaintiffs were grouped in the seven class actions according to the HSD sewer basins that serviced their residences. The trial court consolidated all of the lawsuits into Farley and Paul's case for pretrial purposes. However, none of the seven smaller class action lawsuits stated claims for unconstitutional takings under the Indiana Constitution, and, as a result, Farley and Paul's individual claims for an unconstitutional taking are the only such claims at issue.

After the class actions were consolidated for pretrial purposes, HSD filed an Amended Motion for Summary Judgment, to which Farley and Paul responded. HSD also moved to strike a portion of Farley and Paul's expert witness' affidavit, which Farley and Paul had submitted in opposition to HSD's Amended Motion for Summary Judgment. After a hearing, the trial court struck portions of Farley and Paul's expert witness' affidavit and granted HSD's Amended Motion for Summary Judgment as to all claims. This appeal followed.

*DISCUSSION*

## I. THE STRIKING IN PART OF FARLEY AND PAUL'S EXPERT WITNESS' AFFIDAVIT

■ We review the trial court's decision to exclude evidence for an abuse of discretion. *Ott v. AlliedSignal, Inc.*, 827 N.E.2d 1144, 1149 (Ind.Ct.App.2005), *trans. denied.* An abuse of discretion occurs only when the trial court's action is clearly against the logic and effect of the facts and the circumstances. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 767 (Ind. Ct.App.2003).

■ The admissibility of affidavits in summary judgment proceedings is governed by Indiana Trial Rule 56(E), which provides, in relevant part, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." When an affiant presents a conclusion of fact, it must appear that the affiant had an opportunity to observe and did observe the matters about which he or she testifies. *See Scott v. City of Seymour,* 659 N.E.2d 585, 592 (Ind.Ct. App.1995). We also take note of Indiana Evidence Rule 704, which provides:

(a) Testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.

(b) Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness

---

1. The trial court later dismissed Massie from the case at Massie's request.

2. The trial court later granted the City of Hammond's motion for summary judgment and dismissed the City from the case. Farley and Paul did not appeal that decision.

has testified truthfully; or legal conclusions.

In this case, Farley and Paul submitted the affidavit of Michael T. Williams in their response to HSD's Amended Motion for Summary Judgment. Williams, a professional engineer, stated a number of opinions in his affidavit, each supported by a discussion of relevant facts. Williams asserted that his opinions were based on "the facts set out in the attached documents, some of which are excerpted and recited herein, . . . and the interpretations of these facts based on my education, experience, and scientific training and investigation." Appellants' App. p. 1548. He listed the documents he reviewed while preparing his opinions, including maps of the sewer system, operational plans, a report of tonnage removal of solids from the sewer system, and citizen complaints about sewer backups. Upon HSD's motion, the trial court struck Williams' first and third statements of opinion, determining that they were "conclusory, based on factually incorrect assumptions or factually unsupported. The result is these claimed expert opinions are no more than speculation and therefore inadmissible." Appellants' App. p. 28.

■ Williams' first statement of opinion was as follows: "HSD failed to properly clean its sewers resulting in accumulated obstructions on July 26, 2007 reducing sewer water carrying capacity, thereby causing these sewer water backups to all plaintiffs." Appellants' App. p. 1551. In support of this opinion, Williams repeatedly asserted that HSD "was under a duty" to clean its sewers pursuant to goals set in various plans created by HSD. Appellants' App. pp. 1552, 1553 (stating that a plan "imposed a duty on HSD" and that HSD "was under a duty"), 1554 (asserting that HSD had a "duty to regularly clean its sewers"), 1555 (describing "a reasonable

annual duty"). The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue of law within the province of the court. *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1263 (Ind.Ct.App. 2002), *trans. denied.* Consequently, Williams' first statement of opinion is based on facts that are permeated with a legal conclusion, specifically the existence of a duty. Williams' legal conclusion is not evidence, and the trial court did not abuse its discretion by striking this statement of opinion from his affidavit. *See id.* at 1263–64 (determining that the trial court did not abuse its discretion by striking a portion of an affidavit that discussed the existence of a defendant's duty to the plaintiff).

■ Williams' third statement of opinion is as follows: "HSD failed to properly clean its non-scouring sewers and keep these sewers free of accumulated debris, thereby reducing sewer capacity for plaintiffs' [sic] connected to and upstream of non-scouring sewers and causing these sewage backups into Plaintiffs' homes which were connected to or upstream of the non-scouring sewers." Appellants' App. pp. 1583–84. Unlike Williams' first statement of opinion, this opinion is not supported by impermissible legal conclusions. Instead, in support of this opinion, Williams identified maps of HSD's sewer lines with flow velocity of less than 2.5 feet per second. Williams asserted that these sewer lines lack sufficient flow velocity to be self-cleaning and accumulate obstructions at a higher rate than other lines. Williams asserted that HSD failed to prioritize cleaning these low flow, or "non-scouring," lines, which allowed obstructions to develop and caused sewer backups into the homes along those lines. Appellants' App. p. 1570.

Williams' third statement of opinion is based on his experience, education, and

review of evidence. Thus, Williams had knowledge of the basis of the dispute, and his expert opinion could be helpful to the finder of fact. These conclusions weigh in favor of admission of Williams' opinion. *See Scott,* 659 N.E.2d at 592–93 (determining that an expert witness' affidavit should have been considered because the affiant established an adequate factual foundation).

HSD argues that Williams' affidavit contains factual errors, including miscalculating the size of the sewer system. HSD further argues that Williams selectively highlighted evidence in support of his opinion. HSD also notes that Williams failed to identify any actual obstruction in any of HSD's sewer pipes at the time of the flood event. Finally, HSD claims that other evidence establishes that, contrary to Williams' assertion, HSD gave high priority to the inspection and cleaning of low-velocity sewer lines. These arguments go to the weight and credibility of Williams' opinions, not their admissibility.

Based on this discussion, we conclude that the trial court did not abuse its discretion by striking Williams' first statement of opinion in his affidavit. However, the trial court abused its discretion by striking Williams' third statement of opinion.

## II. GRANT OF SUMMARY JUDGMENT ON GOVERNMENTAL IMMUNITY AND FARLEY AND PAUL'S CLAIMS FOR NEGLIGENCE

In reviewing summary judgment rulings, we apply the same standard as the trial court. *Kopczynski v. Barger,* 887 N.E.2d 928, 930 (Ind.2008). We affirm a grant of summary judgment unless there is a genuine issue as to a material fact or the moving party is not entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). Once the moving party has sustained its burden of showing, prima facie, that there is no genuine issue of material fact on a determinative issue, the nonmovant must respond by setting forth specific facts showing that a genuine issue exists. *See Brady v. Brown Twp. Life Star Ambulance Serv.,* 802 N.E.2d 983, 987 (Ind.Ct.App.2004). The nonmoving party may not simply rest on the allegations or denials in the pleadings. *Id.* All facts and reasonable inferences from the facts are to be construed in favor of the nonmoving party. *Kopczynski,* 887 N.E.2d at 930.

■ HSD asserted in its summary judgment documents that Farley and Paul's tort claims must fail because HSD had immunity. Whether governmental immunity applies is a matter of law for the courts to decide. *Gary Cmty. Sch. Corp. v. Roach–Walker,* 917 N.E.2d 1224, 1226 (Ind.2009). The party seeking immunity bears the burden of establishing the immunity. *Id.* If the facts allow multiple reasonable conclusions as to an element triggering the immunity, then the governmental unit has failed to establish its immunity. *Id.*

■ The policy underlying governmental immunity for discretionary functions is the idea that certain kinds of executive branch decisions should not be subject to judicial review. *Peavler v. Bd. of Comm'rs of Monroe Cnty.,* 528 N.E.2d 40, 44 (Ind.1988). The separation of powers doctrine forecloses the courts from reviewing political, social, and economic actions within the province of coordinate branches of government. *Id.* Governmental immunity for discretionary functions also avoids inhibiting the effective and efficient performance of governmental duties. *Id.*

■ Indiana Code section 34–13–3–3 (2006) identifies specific circumstances un-

der which governmental entities or government employees acting within the scope of their employment are immune from liability. This case focuses on subsection (7) of the statute, which provides that such entities and employees are not liable for "[t]he performance of a discretionary function...." This statute is in derogation of the common law, and we construe it strictly against limiting a claimant's right to bring suit. *See Roach–Walker,* 917 N.E.2d at 1229.

In determining whether governmental acts are discretionary, Indiana applies the "planning-operational" standard. *City of Valparaiso v. Defler,* 694 N.E.2d 1177, 1182 (Ind.Ct.App.1998), *trans. denied.* Planning functions are discretionary and therefore shielded by immunity, while operational functions are not. *Id.* Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.* Operational functions are characterized by the execution or implementation of previously formulated policy. *Id.*

In this case, the parties do not agree on what action or inaction by HSD is at issue and possibly subject to governmental immunity. Farley and Paul assert that the plaintiffs' basement flooding was caused by HSD's negligent failure to maintain the sewer system, which Farley and Paul contend is an operational matter to which immunity does not apply. By contrast, HSD contends that the flooding was caused by excessive rain overloading the capacity of HSD's combined sewer system. HSD further contends that through long-term planning and construction projects, it is addressing the overflows of its sewer system and the basement floods that resulted from those overflows. Therefore, HSD concludes, basement flooding before and after July 26, 2007, is being addressed

through a policymaking process, and discretionary immunity applies.

As we noted above, whether governmental immunity applies is a question of law. Nevertheless, the parties dispute the facts upon which the application of immunity turns. Pursuant to our standard of review, we review the facts regarding sewer maintenance and the relationship between sewer maintenance and the sewage backups in the light most favorable to Farley and Paul. HSD's Combined Sewer System Operation Plan, which was prepared for HSD in 1996, recommends that HSD "clean the entire sewer system every five years and all catch basins every two years" in order to "minimize sewer system backups." Appellants' App. pp. 1477, 1486. Despite this recommended goal, Scott Mitchell, HSD's superintendent of maintenance, asserted that "[i]t would be a perfect world if I could make it around this whole system once with every eight to ten years, but you just can't do that." *Id.* at 2003. Furthermore, HSD does not perform preventative maintenance on a set schedule. Instead, crews are assigned to sectors of the city, and when the crews are not assisting in repairs or responding to flooded basements or other reports of trouble, and "the weather's nice, staff is at work, trucks are working," the crews will inspect and clean the sewer system in their sectors subject to Mitchell and a crew chief's direction. *Id.* at 1999.

Mitchell provides direction to crews on preventative maintenance, but he does not make "policy decisions" for HSD. Appellants' App. p. 2434. In 2006, HSD's crews did approximately 28.58 miles of preventative maintenance, which is a fraction of Hammond's approximately 400 miles of sewers. In addition, once a section has been cleaned, crews may not return to clean it "for five, six, seven years unless there's a problem." *Id.* at 2034. Finally,

on July 26, 2007, when HSD staff responded to complaints from homeowners whose basements had flooded, the staff checked manholes nearest to the homes, and at two locations they found debris on the walls of the manhole barrel.

Based on the foregoing evidence, there is a dispute of fact as to whether inadequate maintenance played a role in the sewer backups into the plaintiffs' homes on July 26, 2007. HSD points to evidence that its staff inspections of manholes on that date revealed no evidence of actual blockage in any of HSD's sewer lines. HSD also points to a model generated by engineer Stephen Sticklen which indicates that even if the sewers had been completely clean on July 26, 2007, the sewers still would have overflowed and backed up into Farley and Paul's basements due to the sheer volume of storm water. We are required by our standard of review to construe the facts in the light most favorable to Farley and Paul. These facts allow multiple reasonable conclusions as to an element triggering governmental immunity; consequently, HSD has failed to establish its immunity. *See City of Bloomington Utils. Dep't v. Walter*, 904 N.E.2d 346, 353 (Ind.Ct.App.2009) (affirming the denial of summary judgment where the plaintiffs alleged that the defendant had failed to properly maintain its sewers, and the defendant's maintenance of its sewers was a discretionary act rather than policymaking), *trans. denied*.[3] The trial court erred by granting summary judgment to HSD

on the plaintiffs' tort claims on grounds of immunity.

Furthermore, to the extent that the trial court granted summary judgment to HSD on the merits of Farley and Paul's claims for negligence, we conclude that the decision was also erroneous. The same evidence we have discussed above regarding negligent maintenance of HSD's sewers demonstrates the existence of material issues of fact as to whether HSD negligently caused the sewer backups into Farley and Paul's basements. Consequently, we reverse and remand for further proceedings on that claim.

## III. SUMMARY JUDGMENT ON FARLEY AND PAUL'S CLAIMS FOR AN UNCONSTITUTIONAL TAKING OF THEIR PERSONAL PROPERTY

Farley and Paul alleged in their complaint that the intrusion of sewage into their homes interfered with their right to use their "homes and/or property" without just compensation. Appellants' App. p. 52. In response to HSD's Amended Motion for Summary Judgment, Farley and Paul focused their claims and asserted that their takings claims were based on the destruction of personal property that they had kept in their basements at the time of the sewage intrusion. On appeal, Farley and Paul continue to argue that the unconstitutional taking consisted of the destruction of their personal property. Therefore, we

---

**3.** HSD cites to *Beck v. City of Evansville*, 842 N.E.2d 856 (Ind.Ct.App.2006), *trans. denied*, but that case is distinguishable. In that case, homeowners brought tort claims against a city for stormwater and sewage flooding resulting from severe thunderstorms. On appeal from a grant of summary judgment to the city, a panel of this Court concluded that the flooding was caused by stormwater overflows in Evansville's combined sewer system, and the city was implementing a long-term plan to address the overflows. Furthermore, this Court concluded that the homeowners had failed to present any evidence that Evansville was negligently operating its sewer system. Consequently, this Court affirmed the trial court's grant of summary judgment to the city on grounds of governmental immunity. By contrast, in the current case Farley and Paul have submitted evidence of negligent maintenance of HSD's sewers. Therefore, *Beck* is not controlling.

disregard any takings claims they may have originally pleaded with respect to their homes and address the alleged taking of their personal property.

■ Article 1, Section 21 of the Indiana Constitution provides, "[n]o person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." [4] We refer to this provision as "the Takings Clause." This provision and the federal takings clause are textually indistinguishable and are to be analyzed identically. *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind.2009).

The parties cite several Indiana authorities on this issue, but none of them are on point because they address real property, not personal property. In *ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 173 P.3d 734 (2007), a flood struck Sparks, Nevada. On the day of the flood, City officials barricaded an industrial area of the town and prevented property owners from entering their land to retrieve personal property. The property owners were denied access to their land for forty-eight hours, and the flood damaged their personal property during that time.

The property owners sued the City of Sparks pursuant to the takings clause set forth in the Nevada Constitution.[5] The owners asserted that the City's actions prevented them from retrieving their personal property before the flood and caused it to be damaged. The trial court granted summary judgment in favor of the City, and the property owners appealed. The Supreme Court of Nevada noted that the City's prohibition on access to property lasted for only forty-eight hours. The court concluded that a "brief interference with property rights," such as the one at issue in that case, does not rise to the level of a compensable taking. *Id.* at 650, 173 P.3d at 741. Consequently, the court affirmed the trial court's grant of summary judgment.

■ In the current case, HSD's interference with Farley and Paul's personal property took the form of an infiltration of sewage rather than a prevention of access to personal property. Nevertheless, the sewage backup lasted for a short period of time. The sewage backup in Paul's basement had a duration of six to twelve hours. The backup in Farley's basement lasted four days because she was out of town during that period of time and cleaned up the basement immediately upon her return home. We adopt the reasoning in *ASAP Storage* and conclude, based on the facts of this case, that the sewage infiltration was brief in nature and did not rise to the level of a compensable taking under the Takings Clause despite harm to Farley and Paul's personal property. Therefore, the trial court did not err by granting summary judgment to HSD on Farley and Paul's claims for an unconstitutional taking.

## CONCLUSION

For the reasons stated above, we affirm in part the judgment of the trial court, reverse in part, and remand for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

---

4. Farley and Paul have not stated claims for unconstitutional takings under the United States Constitution.

5. That clause provides, "[p]rivate property shall not be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made." Nev. Const. art. 1, § 8(6).

BROWN, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I believe that the trial court was correct in striking expert Williams' third statement of opinion. And since that opinion provides the only purported evidence that negligent maintenance of the sewer lines caused the non-scouring sewer plaintiffs' flooding, the plaintiffs are unable to sustain a prima facie negligence claim and the defense is entitled to summary judgment.

Williams claims in his third opinion set that "HSD failed to clean its non-scouring sewers and keep these sewers free of accumulated debris, thereby reducing sewer capacity for plaintiffs[ ] connected to and upstream of non-scouring sewers and causing these sewage backups into plaintiffs' homes which were connected to or upstream of the non-scouring sewers." Appellants' App. p. 1563–64. Williams opines that:

(a) the HSD failed to properly clean its non-scouring sanitary sewers within its sewerage system within the City of Hammond before July 26, 2007, (b) the HSD's failure to properly clean its non-scouring sanitary sewers caused accumulated obstructions including but not limited to obstructive sludge, obstructive sediment, obstructive debris, and obstructive Fats, Oils and Greases (FOGS) to exist within its non-scouring sewers within its sewerage system on July 26, 2007, (c) these accumulated sewer obstructions were present on July 26, 2007 before the rainfall, (d) these accumulated sewer obstructions interfered with and prevented proper drainage of the HSD sewerage system by reducing the sewer water carrying capacity of the sewerage system and (e) these accumulated obstructions caused the sewage backups into these one-hundred-twenty-three (123) Retained Plaintiff Households' homes and consequent injuries to these Plaintiffs on July 26, 2007 due to significantly reduced hydraulic capacity. *Id.* at 1564. Williams explains that non-scouring sewer systems convey flows more slowly than scouring systems, so they are non-self-cleaning and require greater attention and maintenance. He introduces maps of Hammond's non-scouring sewer lines. And he states that Hammond's Chief of Sewer Maintenance (1) did not know what a non-scouring sewer was, (2) was unaware of the existence of non-scouring lines in various locales, and (3) consequently failed to conduct prudent cleaning of the non-scouring systems. Williams concludes that HSD "was negligent in failing to maintain a non-scouring main sewer listing and failing to inspect and monitor and, if needed, clean with greater frequency its non-scouring main sewers, significantly and substantial[ly] causing the sewer water backups into the 123 Non–Scouring Sewer Plaintiff Households' homes on July 26, 2007 and numerous other class members connected to or upstream of the non-scouring sewers." *Id.* at 1569–70.

An expert witness must have "sufficient facts or data upon which to validly form an opinion." *Burp v. State,* 612 N.E.2d 169, 172 (Ind.Ct.App.1993). "Free flowing speculation is just that and cannot be construed to be a fact that could shed doubt on the validity of other facts. Opinions expressing mere possibilities with regard to hypothetical situations are insufficient to establish a genuine issue of material fact." *C & C Oil Co., Inc. v. Ind. Dep't of State Revenue,* 570 N.E.2d 1376, 1379 (Ind. T.C.1991).

Williams' third conclusion is inadmissible in my opinion because it hinges on an unsubstantiated statement of fact—namely, that debris had accumulated at the non-scouring sewer plaintiffs' homes before the

storm. Williams claims that "accumulated sewer obstructions were present on July 26, 2007, before the rainfall," but he cites no basis for this assertion. There is no indication that he or anyone else observed the alleged obstructions. He notes that excessive debris was removed during general catchbasin cleaning in August, September, and October 2007, but he references no sources indicating that, among the many miles of Hammond sewer lines, debris was present specifically at or near the plaintiffs' homes on the date in question. *Cf. City of Bloomington Utils. Dept. v. Walter,* 904 N.E.2d 346, 348 (Ind.Ct. App.2009) (in which sewer blockage was identified at plaintiffs' home), *trans. denied.* Nor does he quantify the extent of the obstructions or illuminate the level of debris necessary to cause the backups sustained by the plaintiffs.

To make out a claim of negligent maintenance, the plaintiffs must establish that HSD breached an existing standard of care and that the breach proximately caused them injury. Williams may be qualified to testify that HSD breached a duty to properly maintain its non-scouring sewer lines. But without evidence of resulting obstructions at the plaintiffs' households, Williams' opinion that HSD's negligence caused the plaintiffs' flooding becomes nothing more than speculation. And with no competent evidence of causation in the record, the non-scouring sewer plaintiffs are unable to sustain a prima facie negligence claim. Accordingly, I believe there remains no genuine issue of material of fact and the defendants are entitled to judgment as a matter of law.

For these reasons I respectfully dissent and would affirm summary judgment in favor of the defense.